NEW YORK MORTGAGE CO. *v.* SECRETARY OF STATE.

1. CORPORATIONS—FOREIGN CORPORATIONS — ADMISSION TO STATE —BANKING CORPORATIONS.

Banking corporations and those corporations which are within the contemplation of our banking laws are not within the provisions of the statute (Act No. 206, Pub. Acts 1901, as amended by Act No. 34, Pub. Acts 1903) prescribing the terms and conditions on which foreign corporations may be admitted to do business in Michigan.

2. SAME — RIGHT TO DO BUSINESS — FILING ARTICLES — DUTY OF SECRETARY OF STATE—MATTERS CONSIDERED.

In considering whether a foreign corporation presenting its

articles for record preparatory to being authorized to do business in this State is such a corporation as may be so authorized, the secretary of State may consider the history of the applicant, the character of its business, and, it being a financial corporation, the character of the property upon which its bonds or mortgages, which it purposes to sell to citizens of this State, are secured.

3. SAME—REFUSAL TO RECORD ARTICLES—MANDAMUS—PROPRIETY.
   Mandamus will not issue to compel the secretary of State to receive, file, and record the papers of a foreign corporation which, as appears from its history and the persons and corporations with which it is associated, desires to come within the State for the purpose of selling its bonds and securities which are practically worthless.

4. MANDAMUS—DISCRETION—PROPRIETY OF ISSUANCE.
   Mandamus is a discretionary writ which will not be awarded in all cases in which a prima facie legal right is shown, but will be withheld whenever the public interest would be injuriously affected by its issuance, or there is a doubt of its propriety.

Mandamus by the New York Mortgage Company to compel George A. Prescott, secretary of State, to issue a certificate authorizing relator to transact business in this State. Submitted March 5, 1907. (Calendar No. 22,089.) Writ denied December 10, 1907.

*De Forest Paine*, for relator.

*John E. Bird*, Attorney General, and *Charles W. McGill* and *Thomas Ambrose Lawler*, Assistants Attorney General, for respondent.

MCALVAY, C. J. Relator, a foreign corporation organized under the banking laws of the State of New York in October, 1906, desiring to do business in this State, intending to conform with the provisions of an act of the legislature entitled "An act to prescribe the terms and conditions on which foreign corporations may be admitted to do business in Michigan," approved June 6, 1901, being Act No. 206, Pub. Acts 1901, as amended [by Act No. 34, Pub. Acts 1903], made and presented to respond-

ent the statements and documents required by said law and at the same time tendered and requested respondent to receive, file, and record the papers, and to issue to relator the certificate which the law provides shall be issued to show compliance with the provision of the statute entitling it to do business in Michigan. Respondent refused to receive and file said papers and to receive the fee tendered, and refused to issue the certificate requested, and returned said documents to relator's attorney with a letter in which he stated:

"This corporation was organized under the provisions of the banking law of New York. I do not find any provisions of statute under which a foreign corporation for the purposes stated in this certificate of incorporation, or for the purposes stated in the sworn statement can be admitted to carry on its business in this State. I therefore return the papers herewith."

This application for mandamus was then made.

In its declaration presented to the respondent relator stated:

"The purpose for which the company desires to be admitted to the State of Michigan is, to make loans secured by mortgages on real estate, to sell such mortgages and bonds of this company secured by mortgages on real estate, but said bonds are not to be sold on the installment plan."

Relator's certificate of incorporation under the provisions of article 7 of the banking law of the State of New York declares:

"The purpose for which it is to be formed is a mortgage loan or investment corporation and to exercise all the powers enumerated and authorized in sections 197 and 199 of the banking law."

"Section 197 prescribes what the article of incorporation shall contain. Section 199 reads:

"In addition to the powers conferred by the general and stock corporation laws, a corporation organized as provided in the two preceding sections shall have power

to sell, offer for sale or negotiate bonds or notes secured by deed of trust or mortgages on real property situated in this State or outside of this State, or choses in action owned, issued, negotiated or guaranteed by it, or may receive money or property either from its own stockholders or other persons in installments or otherwise, and may enter into any contract, engagement or undertaking with such persons for the withdrawal of such money or property, at any time, with any increase thereof, or for the payment to them or to any person of any sum of money at any time, either fixed or uncertain, excepting that said corporation cannot do a general deposit business without complying with the provisions of section fourteen of this chapter."

The company has not complied with said section fourteen, and is not doing a general deposit business.

The purposes for which relator desires to be admitted to do business in this State are not as broad as the powers granted and exercised or which may be exercised by it under the provisions of section 199, art. 7, and section 14 of the New York banking law.

It is contended by relator that it is a foreign corporation duly incorporated for purposes for which a corporation may be formed under the laws of Michigan and therefore entitled to be authorized to do business of that character within this State under section 4 of Act No. 206, Pub. Acts 1901. This section provides:

"No such foreign corporation shall be permitted to transact business in this State unless it be incorporated, in whole or in part, for a purpose or object for which a corporation may be formed under the laws of Michigan, and then only for such purpose or object."

It is claimed that under Act No. 205, Pub. Acts 1877, as amended, or under Act No. 232, Pub. Acts 1903, such corporations may be formed in Michigan. It is not contended on the part of respondent that such corporations cannot be formed in this State under the act of 1877 above referred to, but it is urged:

(a) That relator, a foreign corporation, organized un-

der a banking law, cannot be admitted to do business in Michigan.

(b) That the statutes referred to do not .authorize the admission of foreign corporations to do business controlled and supervised by the banking commissioner, and within the contemplation of our banking laws.

(c) That the history of this corporation, the character of its business, the character of the bonds and mortgages and the property upon which the same are secured, warranted the respondent in withholding permission to do business.

In this State corporations organized for the purpose for which relator asks to be permitted to do business within this State are required, for the protection of those of its citizens who do business with them, to conform with the provisions of the statute under which they may organize (Act No. 205, Pub. Acts 1877, as amended, entitled "An act to provide for the incorporation of societies for the receiving, loaning and investing of money").

Among other things this act requires such corporation, before it receives any loans or deposits, to invest $100,000 "of its paid-in, permanent stock capital," in real estate securities on unincumbered real estate of at least double the value of the amount secured ( §§ 3, 8 ) ; to make reports under oath, not less than four times a year, and whenever required, to the commissioner of the banking department, showing the resources, assets, and liabilities of such corporations at any given time, which reports shall be published; to make special reports when required; to submit at any time to an examination of all books and assets by the commissioner giving him free access to them for such purpose, and to pay him a fee therefor; a penalty of $100 for each day's delay after time expires when report should be made is provided for failure to make reports.   When in the opinion of the bank commissioner the corporation is insolvent, or when the business is conducted contrary to law and prejudicial to the interests of creditors, he makes report to the attorney general, who, if the facts

warrant it, proceeds to dissolve the corporation (§§ 23, 24).

In the State of New York also the legislature, by the general banking laws, has undertaken to protect its citizens in dealing with relator and similar corporations, by provisions practically the same as those above recited, now in force in Michigan.

The contention of relator is, that being organized under the laws of a foreign State to conduct the business it asks to be authorized to conduct in this State, and to do which a corporation may be organized under our laws, that fact is conclusive of its right to be admitted to this State under Act No. 206, Pub. Acts 1901, as amended. If this is true, it requires no argument to show that such construction would be repugnant to the policy of this State relative to such business, and would abolish, as far as foreign corporations conducting such business within the State are concerned, every protection now guaranteed to the people of this State in dealing with domestic corporations of that character, and would give an unfair advantage to such foreign corporation over those organized within the State. In other words, such construction would operate, as to such foreign corporations, as a repeal of all the beneficial and protective provisions of Act No. 205, Pub. Acts 1877. To hold that such was the legislative intent would be contrary to every suggestion that arises to the mind upon the consideration of the proposition.

It is evident that the legislature never intended to make such discrimination against the citizens of this State, and never intended to include within this statute and admit to this State foreign corporations to do a business of the kind relator is engaged in, of such peculiar nature, that the legislature has in its wisdom, for the protection of its citizens, put such business under official supervision, care, and control.

The matter of admitting foreign corporations to do business in a State is absolutely within the discretion of the legislature. It is granted, not as a matter of right,

but as a matter of comity.   *Hartford Fire-Ins. Co.* v.
*Raymond,* 70 Mich., at pages 501–2, and cases cited.
This comity is never extended by States "where the existence of the corporation or the exercise of its powers are
prejudicial to their interests or repugnant to their policy."
Justice Field in *Paul* v. *Virginia,* 8 Wall. (U. S.) 168.
Our construction of the act is that banking corporations
and those corporations which are within the contemplation of our banking laws are not within the provisions of
the act authorizing foreign corporations to transact business in this State.

The history of relator, the character of its business and
of the property upon which its bonds or mortgages are
secured, were, we think, matters properly considered by
respondent, at least as bearing upon the construction of
the statute.   It is alleged in the return of the respondent
that the Industrial Savings & Loan Company, a New
York corporation, acquired a tract of land at Grantwood,
N. J.; that afterwards its management organized a new
corporation, called the Columbia Real Estate & Investment Company, to which company the Grantwood property was transferred and a mortgage of several hundred
thousand dollars given back to the Industrial Savings &
Loan Company; that the management of the Grantwood
property in order to obtain money to improve its property
was desirous of issuing bonds, but the Columbia Real
Estate & Investment Company had not authority to do so.
The management then organized another company, the
New York Mortgage Company, under the general corporation laws of New York; that the particular character of
business in which the said New York Mortgage Company
engaged was the selling of debentures and bonds claimed to
be secured by mortgages upon the property located at Grantwood, N. J.; that the said New York Mortgage Company
was granted a certificate of authority to do business in this
State by respondent, who was not then acquainted with the
true character of its affairs, its purpose being "to negotiate,
receive, hold, own, and dispose of and deal in and with

bonds, mortgages, trust deeds, debentures, notes, and other securities of firms, persons, and corporations; to loan money on the security of real estate and personal property;" that this New York Mortgage Company never loaned a dollar upon real estate in this State but sold its bonds in various denominations to the citizens of this State; that during 1906 the authorities of the State of New York discovered that the laws under which said company was incorporated did not permit the said company to sell bonds or investment securities of any kind; that said company was notified of such fact by the superintendent of banks of the State of New York, whereupon the said New York Mortgage Company changed its name to the Grantwood Realty Company, organized the New York Mortgage Company, which is the relator, under the general banking laws of the State of New York; that this Grantwood property mentioned is the particular property the mortgages cover which are supposed to secure the bonds which relator desired to sell to the citizens of this State; that there are first and second mortgages on the Grantwood property aggregating $1,000,000; that the Industrial Savings & Loan Company, one of these corporations mentioned above, has mortgages on said property of about $800,000; that the management of all of these companies is practically the same; that there is an interchange of interests, and the property at Grantwood is not worth as much as the mortgages upon it, and the security for the bonds relator desires and requests permission to sell to citizens of this State is insufficient to protect the purchasers.

These facts are before this court uncontradicted. A legitimate conclusion to be drawn from them is that relator's desire is to come within this State for the purpose of selling its bonds and securities which are practically worthless, and it invokes the official indorsement of the State in furtherance of such scheme.

If our construction of the statute were as contended for by relator we would not hesitate, in view of these facts, to exercise our discretion in withholding the writ for reasons

of public policy.    The naked right to the writ is not suffi-
cient to warrant its issuance.    It may be withheld where
the public interest would be injuriously affected, and if
there is a doubt of its propriety it will not be issued.    26
Cyc. p. 146.

This court has repeatedly held that this discretionary
writ will not be awarded in all cases, even when a prima
facie right to relief is shown, but regard will be had to the
exigency which calls for exercise of such discretion, the
nature and extent of the wrong or injury which would
follow a refusal of the writ, and other facts which have a
bearing upon the particular case.    *Tennant* v. *Crocker*,
85 Mich. 328, approved in the following cases:    *Baker*
v. *Board of State Canvassers*, 111 Mich. 378; *MacKin-
non* v. *Auditor General*, 130 Mich. 552; *George N.
Fletcher & Sons* v. *Alpena Circuit Judge*, 136 Mich.
511; *Sherwood* v. *Rynearson*, 141 Mich. 92; *Grand
Rapids, etc., R. Co.* v. *Auditor General*, 144 Mich. 77.
See, also:    *Wiedwald* v. *Dodson*, 95 Cal. 450; *State, ex
rel. Hathorn*, v. *Express Co.*, 95 Minn. 442; *People, ex
rel. Wood*, v. *Board of Assessors*, 137 N. Y. 201;
High on Extraordinary Legal Remedies (2d Ed.), § 9,
and notes; Merrill on Mandamus, § 62.

The writ is denied.

Carpenter, Blair, Montgomery, and Hooker, JJ.,
concurred.