### UNION SAVING ASS'N v. BURNS.

No. 9000—Opinion Filed Oct. 22, 1918.

Rehearing Denied Nov. 19, 1918.

(176 Pac. 227.)

1. **Building and Loan Associations—Foreign Associations—Filing Charter.**

U. S. A., a foreign building and loan association, desiring to engage in business in the state of Oklahoma, filed a proper bond with the state treasurer in the sum of $10,000, filed with the bank commissioner a certified copy of its charter, constitution, and by-laws, together with a statement properly verified by oath of its capital stock and liabilities, appointed a service agent, and substantially complied with all the provisions of article 8, c. 15, Rev. Laws 1910. A certificate of authority to transact business in Oklahoma was issued to said company by the bank commissioner. Held, that after a compliance with article 8, c. 15, Rev. Laws 1910, and the issuance of the certificate of authority to transact business in this state by the bank commissioner, that, upon receipt of said certificate, said company was entitled to engage in the business of making loans in this state, although it had not complied with section 1335, same being section 1, art. 9, c. 15, Rev. Laws 1910.

2. **Same—Supervision of Banking Department—Statute.**

The enactment of article 8, c. 15, Rev. Laws 1910, was intended by the Legislature to place foreign building and loan associations doing business in this state under the control and supervision of the banking department of the state, and it was not intended by the Legislature that such companies should be governed by the general laws relating to the admission of foreign corporations into the state.

3. **Statutes—General and Special Acts—Repeal.**

Where there are two statutes upon the same subject, the earlier being special and the later general, the presumption is, in the absence of an express appeal, or an absolute incompatibility, that the special is to remain in force as an exception to the general, and that all matters covered by the special act shall be governed by the provisions contained in said special act.

(Syllabus by Davis, C.)

Error from District Court, Mayes County; Chas. G. Watts, Judge.

Action by Union Saving Association against Maggie Burns. Judgment for defendant, and plaintiff brings error. Reversed, and judgment ordered to be entered for plaintiff and against defendant for a stipulated amount.

Ames, Chambers, Lowe & Richardson and Adams & Wills, for plaintiff in error.

A. L. Battenfield and R. A. Wilkerson, for defendant in error.

Opinion by DAVIS, C. This appeal was lodged in this court from the district court of Mayes county, Okla. On the 22d day of May, 1916, plaintiff in error, as plaintiff in the court below, began an action against defendant in error, Maggie Burns, as defendant in the lower court, to recover the sum of $1 000, interest, costs, and attorney's fees alleged to be due plaintiff by reason of a loan made to defendant by plaintiff. The record discloses that plaintiff is a foreign building and loan association, organized under, and doing business by virtue of the laws of the state of South Dakota, with its principal officer at Sioux Falls, S. D.; that on or about the 5th day of July, 1909, Maggie Burns made an application for a loan of $1,000 to be secured by a mortgage on real estate in Mayes county, Okla., and that said loan was subsequently made and the money advanced to Maggie Burns.

Plaintiff instituted this action to secure a judgment against Maggie Burns for said sum thus obtained, and to foreclose the mortgage given to secure the payment thereof, and have the property sold, and have the proceeds applied to the payment of said indebtedness. There is no controversy as to

the fact that the loan was made and the money furnished defendant by plaintiff, and that no part of said sum so furnished had been paid when this action was instituted by plaintiff. The only defense interposed by defendant was that plaintiff, at the time said loan was made, was a foreign corporation, and that it had not complied with the laws of Oklahoma relative to the admission of foreign corporations into the state of Oklahoma, and was therefore not entitled to transact business in this state.

There is no controversy as to the fact that the Union Saving Association did not comply with article 9 of chapter 15, Revised Laws of 1910, but that it did comply substantially with all the provisions of article 8 of chapter 15, Revised Laws of 1910, and received a certificate of authority to do business in the state of Oklahoma from the bank commissioner, which certificate was in force at the time the loan in question was made.

At the conclusion of the evidence the court rendered a judgment in favor of defendant. The judgment of the court was based upon the fact that plaintiff was a foreign corporation, and that at the time of the institution of said action had not filed with the secretary of the state of Oklahoma a certified copy of its articles of incorporation as required by the state of Oklahoma, and was therefore not entitled to maintain said action. A motion for a new trial was filed and overruled. From the action of the court in overruling said motion an appeal is prosecuted to this court.

The only question presented here for determination is a construction of article 8 and article 9, c. 15, Revised Laws of 1910.

It is provided in section 1320, the same being section 1 of article 8, c. 15, Revised Laws of 1910, as follows:

"All foreign building and loan associations and all other corporations or associations of persons, incorporated, organized, residing or having their place of business outside the state of Oklahoma and transacting a building and loan business in the state of Oklahoma, by whatever name they may be known, shall conduct such business in this state in accordance with this article, and no such building and loan association shall have authority to transact any business in this state until it shall procure from the bank commissioner of this state a certificate of authority so to do. To procure such certificate, such building and loan association shall comply with the provisions of this article."

Section 1321 of said article provides as follows:

"Each building and loan association shall deposit with the state treasurer annually, to be approved by him, a good and sufficient bond in the sum of ten thousand dollars conditioned that it will fulfill all of its contracts and obligations entered into with all residents of this state, and will comply with all the requirements of this article."

Section 1322 of this article provides that each building and loan association, desiring to do business in this state shall file with the bank commissioner a certified copy of its charter, constitution, by-laws, and all other rules and regulations, showing its manner of conducting business, together with a statement, verified by the oath of the president or managing officer, showing the amount of capital stock, assets, and liabilities, and all kind and character of same; which statement, verified by oath, shall be filed each six months thereafter and that the certificate of the bank commissioner shall be good for six months only from the date it is issued, and that no provision of either the constitution, by-laws, or rules and regulations shall be of any force or effect, or be binding upon any person doing business with such association, until a certified and verified copy of same has been filed with and approved by said bank commissioner and the provisions of said section have been fully complied with.

Section 1323 of said article provides for the appointment of an agent in each county where said association desires to transact business, and, in case of failure of said association to appoint a county agent in each county, that the certificate of the bank commissioner shall limit the right of said association to do business to those counties wherein said agent has been appointed.

Section 1324 of said article provides that said association, in addition to the foregoing requirements shall file with the bank commissioner an application in writing for a permit and shall accompany the said application with a fee of $10; that if the bank commissioner is satisfied that said association is solvent, and is doing and intends to transact a legitimate business, and has not violated any of the provisions of article 8, he shall, when all the requirements have been met, issue to said association a certificate of authority to transact business for a period of six months from the date of such certificate, and until such certificate has been issued said association shall not transact any business in this state.

Section 1325 of said article provides that the bank commissioner may at any time investigate the condition of any building and loan association, and whenever it shall be ascertained from said examination that any building and loan association is insolvent

or in a failing condition, or that it has violated any of the provisions of said article, it. shall be his duty to revoke the certificate of authority to do business in this state.

The foregoing provisions constitute all of the provisions that are necessary to a consideration of this case.

Section 1335 of article 9, c. 15, Revised Laws 1910, is as follows:

"No foreign corporation, except created solely for religious or charitable purposes, shall transact business within this state until it shall have filed in the office of the secretary of state a certified copy of its charter or articles of incorporation, which shall be recorded in a book to be kept by the secretary of state for that purpose, and shall have paid the fees required by law."

It is further provided in said article that said corporation shall appoint a resident agent upon whom service of process may be had, and that a duly authenticated copy of said appointment shall be filed in the office of the secretary of state. It is further provided that a failure to meet the foregoing requirements shall render any contract entered into between said corporation and citizens of this state null and void, and no court of this state shall enforce said contract in favor of said corporation.

Can a foreign building and loan association that has fully complied with all the requirements of article 8 of chapter 15, Revised Laws 1910, but has failed to comply with article 9 of chapter 15, Revised Laws 1910, maintain an action in the courts of this state to enforce a contract entered into with a resident citizen of this state?

This question has been before the various courts of the different states, and, with one exception, has been answered in the affirmative. This exact question was before the Supreme Court of the United States in the case of St. Louis. Iron Mountain & Southern Railway Co. v. Commercial Union Insurance Co. et al., 139 U. S. 223, 11 Sup. Ct. 554, 35 L. Ed. 154. The case arose in the Circuit Court of the United States for the Eastern District of Arkansas, and was subsequently appealed to the Supreme Court of the United States. It seems from the opinion in this case that the statute of Arkansas was substantially the same as the provisions of our statute heretofore set out. That part of the opinion relative to the question under consideration is as follows:

"At the very foundation of this action lies the objection of the defendant that the plaintiffs could not acquire or enforce any rights under or by virtue of the contracts of insurance by them within the state of Arkansas, because they had not complied with the statute of Arkansas of April 4, 1887, c. 135, entitled 'An act to prescribe the conditions upon which foreign corporations may do business. in this state,' and containing the following provisions.".

The opinion then sets out the provisions of the statute of Arkansas as to foreign corporations desiring to transact business in said state, which provision provides that any foreign corporation desiring to transact business in this state should, by its certificate under the hand of its president and seal of such corporation, file in the office of the secretary of state the name of some person to be designated as its agent, who should be a citizen of Arkansas, upon whom service of process might be had; and said section further provides that, in the event that said corporation should fail to comply with this provision, all contracts with citizens of the state of Arkansas should be void as to the corporation, and should not be enforced in any state in favor of said corporation.

This was one of the earliest statutes of this kind passed by any state. but a counterpart of that statute, concerning fire insurance, companies, had for years been in force, and the main features of the statute in reference to foreign fire insurance companies provided that no person should act as agent or solicitor in said state until the provisions of the statute relative to foreign fire insurance companies had been fully complied with. It was provided that no insurance companies not of the state of Arkansas, nor its agents, should do any business in said state until said company had filed with the auditor a written stipulation, duly authenticated by the company, agreeing that any legal process affecting the company, served on the auditor or the party designated by him. or the agent specified by said company to receive service of process for the company, shall have the same effect as if served personally on the company within said state. This statute also provided that such companies should report to the auditor annually the amount of premiums received within the state, and certify to the auditor the names of agents appointed by them to receive risks, issue policies, or receive applications in said state, and that no agent should transact any business until he had procured a certificate from the auditor. A penalty of $500 was provided to be assessed as a fine against any one violating the provisions of said act. It was also provided by the act relative to foreign insurance companies that, before any company should be permitted to transact any business

in said state, it should file with the auditor of said state a statement of the commissioner of insurance of the state under whose laws it was organized, as to its condition, responsibility, etc., and, if there should be no such commissioner, the auditor might require said company to exhibit to him a statement of its financial condition, and, if it appeared that said company was a responsible company, that the auditor should issue a certificate authorizing it to transact business.

It will be seen from the foregoing statement that the provisions of the Arkansas statute relative to foreign corporations and foreign fire insurance companies are essentially the same as the provisions embodied in our statute relative to foreign corporations and foreign building and loan associations.

After setting forth the various provisions above, the Supreme Court of the United States said:

"It thus appears that the state of Arkansas had established and maintained a distinct system with regard to foreign insurance companies, under the superintendence of the state auditor, by which every such company was required to file with the auditor a stipulation for the service of process upon it, as well as to make full returns of its condition and business to that officer, to report to him the names of all its agents within the state, and to receive from him certificates of authority for itself and for each of its agents; evidently contemplating that a foreign insurance company would have no principal place of business within the state, but would transact its business in the usual manner through agents at different places.

"Such being the settled policy of the state with regard to foreign insurance companies, they cannot reasonably be held to be governed by the act concerning foreign corporations generally, which required a certificate to be filed with the secretary of state, designating an agent upon whom service might be made, and stating the principal place of business of the corporation within the state. To construe that act as including foreign insurance companies would require the drawing of one of two equally improbable inferences: Either that the only stipulations of such companies for service of process upon them should be filed in a different public office from that in which all other returns and documents relating to such corporations are preserved, or else that their stipulations for such service must be filed both with the auditor and with the secretary of state.

"For these reasons we are satisfied that the omission of the plaintiffs to file in the office of the secretary of state the certificate required by the statute of Arkansas of April 4, 1887, c. 135, was no bar to this action, and that the fourteenth instruction requested was rightly refused."

This question was before the Supreme Court of Montana in the case of State ex rel. Aachen & M. Fire Insurance Co. v. Rotwitt, 17 Mont. 41, 41 Pac. 1004. The statute of Montana had a provision similar to the one in this state governing foreign corporations, and also a provision governing fire insurance companies very similar to our statute governing foreign building and loan associations. The insurance company filed with the state auditor of Montana a copy of its articles of incorporation and an appointment of a service agent, as was required of foreign insurance companies desiring to do business in Montana by an act relating to foreign insurance companies, after which the state auditor issued to plaintiff a license to do business. The plaintiff then tendered to the secretary of state for filing a copy of its articles of incorporation and an appointment of a service agent, which was required by the general law regulating foreign corporations. The secretary of state refused to file said articles of incorporation, and an action was brought to compel him to do so. In the body of the opinion we find the following statement of the conclusion of the court:

"We are clearly of the opinion that the laws relating especially to fire insurance companies contemplate that the state auditor is the official with whom must be filed certified copies of their charter, or articles and other documents required of them by the various sections of the insurance statutes, and that it was not the intention of the Legislature to include foreign fire insurance companies in those statutes generally applicable to foreign corporations, and which required them to file certified copies of their articles of incorporation with the secretary of state. Obviously, such was the legislative intent, for, by section 1035 (one of the amendments of 1895) foreign life insurance companies, not on the assessment plan, which appear not to be, especially, strictly regulated by special laws, were declared to be embraced within the provisions of the act under the title of 'Foreign Corporation.' The expression that this one class of foreign insurance companies should be included in the law strengthens the opinion * * * of the general law concerning corporations (Marine Insurance Co. v. St. Louis, I. M. & S. Ry. Co. [C. C.] 41 Fed. 643). The case at bar is very [much] like that of St. Louis, I. M. & S. Ry. Co. v. Commercial Union Ins. Co., 139 U. S. 223, 11 Sup. Ct. 554 [35 L. Ed. 154], where the Supreme Court held that, where it was the settled policy of the state for insurance companies to make returns and receive certificates of authority from the auditor, they could not reasonably be held to be governed by the act concerning foreign

corporations generally, which required a certificate to be filed with the secretary of state designating an agent upon whom service might be made, and stating the principal place of business of the corporation within the state. Upon this authority, the relator should not be held to the necessity of filing its articles of incorporation with the respondent."

The Supreme Court of Michigan had this question for consideration in the case of New York Mortgage Co. v. Secretary of State, 150 Mich. 197, 114 N. W. 82, and Chief Justice McAlvay, speaking for the court, said:

"Our construction of the act is that banking corporations and those corporations which are within the contemplation of our banking laws are not within the provisions of the act authorizing foreign corporations to transact business in this state. The history of relator, the character of its business and of the property upon which its bonds or mortgages are secured, were, we think, matters properly considered by respondent, at least as bearing upon the construction of the statute."

The same construction has been placed on similar acts by the Supreme Court of Indiana in the case of Barricklow v. Stewart, 163 Ind. 438, 72 N. E. 128; also the case of Rehm v. German Ins. & Sav. Inst., 125 Ind. 135, 25 N. E. 173. The Supreme Court of California has uniformly followed this construction on similar acts. This question was considered in the case of Harrigan v. Home Life Insurance Co., 128 Cal. 531, 58 Pac. 180, 61 Pac. 99, and, after an extended review of the question herein involved the court reached the conclusion that, where foreign corporations of a particular kind are governed by special regulations, the general law pertaining to foreign corporations is not applicable to them. 19 Cyc. 1260.

One of the recognized rules of statutory construction is that where there are two acts, one of which is special and the other general the general act is not to be considered as applying to cases covered by the special act. This canon of construction has been uniformly adhered to by our court. In the case of Carpenter v. Russell, Adm'x, et al., 13 Okla. 277, 73 Pac. 930, the rule is announced as follows:

"A general act is not to be construed as applying to cases covered by a prior special act on the same subject."

In the case of Showers et al. v. Caddo County, 14 Okla. 157, 77 Pac. 189, it is said:

"A general statute is not to be considered as applying to cases covered by a special act on the same subject so as to change the procedure of such special statute."

In the case of Gardner v. School District No. 87, 34 Okla. 716, 126 Pac. 1018, Judge Ames, speaking of this question stated:

"Where there are two provisions of the statutes, one of which is special and particular and clearly includes the matter in controversy, and where the special statute covering the subject prescribes different rules and procedure from those in the general statute, it will be held that the special statute applies to the subject-matter and that the general statute does not apply."

Judge Sanborn in the case of Priddy v. Thompson, 204 Fed. 955, 123 C. C. A. 277, states the rule succinctly and clearly as follows:

"Specific legislation upon a particular subject is not affected by a general law upon the same subject, unless it clearly appears that the provisions of the two laws are so repugnant that the legislators must have intended by the later to modify or repeal the earlier legislation. The special act and the general law must stand together, the one as the law of the particular subject, and the other as the general law of the land."

Mr. Justice Van DeVanter of the United States Supreme Court, in the case of Washington v. Miller, 235 U. S. 422, 35 Sup. Ct. 119, 59 L. Ed. 295, speaking for the court said:

"First, such repeals are not favored, and usually occur only where there is such an irreconcilable conflict between an earlier and a later statute that effect reasonably cannot be given to both (United States v. Healy, 160 U. S. 136, 146 (16 Sup. Ct. 247, 40 L. Ed. 369]; United States v. Greathouse, 166 U. S. 601, 605, [17 Sup. Ct. 701, 41 L. Ed. 1130]); second, where there are two statutes upon the same subject, the earlier being special and the later general, the presumption is, in the absence of an express appeal, or an absolute incompatibility, that the special is intended to remain in force as an exception to the general (Townsend v. Little, 109 U. S. 504, 512 [3 Sup. Ct. 357, 27 L. Ed. 1012]; Ex parte Crow Dog, Id. 566, 570 [3 Sup. Ct. 396, 27 L. Ed. 1030]; Rodgers v. United States, 185 U. S. 83, 87-89 [22 Sup. Ct. 582, 46 L. Ed. 816); and, third, there was in this instance no irreconcilable conflict or absolute incompatibility, for both statutes could be given reasonable operation if the presumption just named were recognized."

Article 8 of chapter 15, Revised Laws 1910, was passed in 1905, and has been a part of our statute since that time. It was passed more than four years prior to article 9 of the same chapter, and an examination of these two acts will disclose that it must have been the purpose of the Legislature to place foreign building loan associations un-

der the control and supervision of the banking department. The avowed purpose of both acts is to compel foreign corporations to effect a localization in this state, so that service of process might be had on them, and that they might have assets in this state to satisfy any judgment that might be obtained against them.

An examination of the two acts in question discloses that much more onerous conditions are prescribed for foreign building and loan associations than for any other class of foreign corporation. The bank commissioner is given power to make an examination of their assets at any time he may deem proper, and, in case an examination should disclose an insolvent condition, he is authorized to revoke their certificate authorizing them to do business in this state. Under no conditions is a certificate to do business to extend for more than a period of six months from the date of its issuance. A mere cursory examination of these two acts will disclose that the evident purpose of the Legislature was to place the exclusive control and management of foreign building and loan associations under the supervision of an officer whose duty it would be to safeguard the interest of all parties doing business with them.

The two acts are not repugnant to each other, and, as the law never requires a vain or useless thing to be done, we therefore conclude that when the plaintiff complied with all the provisions of our law relating to foreign building and loan associations as set forth in article 8, c. 15, Revised Laws 1910, that it was entitled to engage in business in this state, and is entitled to enforce any contract, entered into with any of its citizens, in the courts of this state.

We therefore recommend that the judgment of the lower court be reversed, and judgment ordered to be entered in favor of the plaintiff and against the defendant for the amount shown to be due by the stipulations of the parties hereto.

By the Court: It is so ordered.