Note.—See under (1) 32 C. J. p. 1112 § 208; 37 C. J. p. 412 § 92: p. 511 § 250; 14 R. C. L. p. 995; 3 R. C. L. Supp. p. 326. (2) 37 C. J. p 511 § 249 (Anno). (3) 32 C. J. p. 1152 § 265; 14 R. C. L. p. 926; 3 R. C. L. Supp. p. 316; 4 R C. L. Supp. p. 931; 5 R. C. L. Supp. p. 787. (4) 32 C. J. pp. 981, 983, 983 (Anno) § 11; p. 1113 § 208 (Anno).

---

## CITY OF PAWHUSKA v. PAWHUSKA OIL & GAS CO.

No. 15316—Opinion Filed May 4, 1926.

Rehearing Denied July 6, 1926.

**1. Municipal Corporations—Action on Claim Without Presentation to City Authorities —Costs not Recoverable.**

An action to recover on an unliquidated claim against an incorporated city may be maintained without having first presented a verified itemized statement to the municipal authorities for allowance, but, in such case, costs cannot be recovered.

**2. Municipal Corporations—Constitutional Debt Limit not Applicable to Operation of City's Public Utilities.**

The debt limit provisions of section 26, art. 10 of the state Constitution, do not apply to an incorporated city in the operation of a public utility owned exclusively by such city.

**3. Same—Taxation—Unnecessary to Certify to Excise Board Needs of City's Public Utility**

The statutes of this state relating to revenue and taxation do not require the mayor and councilmen of an incorporated city, or officers exercising like power in a city having a charter form of government, to make and certify to the excise board any statement of the estimated needs of such municipality in the operation of a public utility owned exclusively by it.

(Syllabus by Ray, C.)

Commissioners' Opinion, Division No. 1.

Error from District Court, Osage County; A. S. Wells, Assigned Judge.

Action by the Pawhuska Oil & Gas Company against the City of Pawhuska. Judgment for plaintiff, and defendant appeals. Affirmed.

Grinstead & Scott and A. N. Murphy, for plaintiff in error.

Leahy, MacDonald & Files, for defendant in error.

Opinion by RAY, C. This is an appeal by the city of Pawhuska from a judgment in favor of Pawhuska Oil & Gas Company, a corporation, for gas furnished and used by the municipality for fuel in operating water and electric light plants owned exclusively by the city. The water and light plants were constructed and being operated as public utilities for the purpose of furnishing water and light to the city and its inhabitants, pursuant to authorization to do so by the voters of the city as expressed at an election held for that purpose. The Pawhuska Oil & Gas Company was at all times a public service corporation engaged in furnishing gas to the city and its inhabitants under a franchise also authorized by the voters of the city at an election called and held for that purpose.

The city relies upon two points for the reversal of the judgment, as stated in its brief:

"(1) The plaintiff did not file with the city clerk for consideration of the commissioners a statement of its claim against the city with a full account of the items duly verified as to the correctness, reasonableness, and justness of the claim. Therefore, the plaintiff could not maintain its suit.

"(2) There was no sufficient estimate made by the proper city authorities and approved by the excise board of Osage county, providing a fund for the payment of fuel for the public utilities of the city. Therefore, plaintiff could not maintain its suit."

If the city's contention is correct as to either proposition, the judgment must be reversed, otherwise affirmed, as no other question is presented in its brief.

1. A decision of this question requires an interpretation of section 4578, C. S. 1921, a special statute relating to cities only, and chapter 186, S. L. 1913 (brought forward in the 1921 compilation as sections 8595, 6, 7), which is a general act relating to counties, townships, cities, and incorporated towns.

The 1913 Act reads:

"Sec. 8595. All claims for money due from any county, township, city or incorporated town shall be itemized in detail, verified, and filed for allowance, with the proper authority not less than five days before the meeting of such body for such purposes. Such verified claims shall show in detail the amount due on each item, the date thereof,

the purpose for which each item was expended, and such other facts as are necessary to show the legality.

"Sec. 8596. The proper authority of each county, township, city or incorporated town authorized by law to allow claims, shall examine into each claim so filed for allowance at the meetings authorized by law to make such allowance, and if the same, or any part thereof, is found to be correct, and is in compliance with section 1 of this act, the same shall be allowed for payment and a warrant issued therefor.

"Sec. 8597. Any member of the board of county commissioners, township board, city council, board of trustees, or incorporated town, knowingly, willfully and intentionally allowing any claims or entering into any contract on the part of such county, township, city or incorporated town, not specifically authorized by law, shall be deemed guilty of a felony, and upon conviction shall be punished by imprisonment in the penitentiary for a term not to exceed five years, and the official bond of said officer shall in any event be liable for the amount or amounts of money so unlawfully expended or misappropriated."

This act contained no repealing clause. Prior to its enactment there were special statutes as to different municipal subdivisions requiring itemized claims to be filed with the municipal authorities before the same could be allowed. These sections are all brought forward in the 1921 compilation.

Section 10393, applicable to school districts, provides that no warrant shall be issued except on verified claims made under oath, which shall not be allowed unless the same shall be made out in separate items and the nature of each item stated. Section 5285 is applicable to counties. That section provides for filing itemized verified accounts before the same may be allowed by the county commissioners. Section 10946 is applicable to township boards. It provides that in no case shall the township board be authorized to allow any claim or any part thereof until the claimant makes out a statement verified by affidavit as to the amount and nature of his claim. Section 4774 is applicable to towns. It provides that no claim against a town shall be audited or allowed unless it be made out fully and itemized. There is no requirement as to verification. These various sections are cited for the purpose of showing that they are not materially different from the 1913 Act, as to the requirements of claimants. Section 4578 applies to cities only, and is the only one of these special sections under consideration, and is as follows:

"All claims against the city must be presented in writing, with a full account of the items, and verified by the oath of the claimant or his agent, that the same is correct, reasonable and just, and no claim or demand shall be audited or allowed unless presented and verified as provided for in this section: Provided, that no costs shall be recovered against such city in any action brought against it, for any unliquidated claim, which has not been presented to the city council to be audited, nor upon claims allowed in part unless the recovery shall be for a greater sum than the amount allowed with the interest due; and provided, further, that no action shall be maintained against such city in exercising or failure to exercise any corporate power or authority in any case where such action would not lie against a private individual under like circumstances."

The 1913 Act probably goes a little more into detail as to what the itemized and verified statements shall contain, than do the several special statutes, but the distinguishing feature of that Act is that a violation of the law by municipal officers is made a felony.

There is no conflict between section 4578, applicable to cities only, and the Act of 1913. The language of section 4578, by clear implication, authorizes suits to be brought against the city for an unliquidated claim without first filing a verified itemized statement of the account with the municipal officers for allowance, but it particularly provides that in such case no costs shall be recovered against the city.

This brings us to the question as to which of these statutes is controlling in its application to incorporated cities. The 1913 Act is a general statute applying to all municipalities except school districts. We think the correct rule was laid down by this court in Union Savings Ass'n v. Burns, 74 Okla. 1, 176 Pac. 227:

"Where there are two statutes upon the same subject, the earlier being special and the later general, the presumption is, in the absence of an express repeal, or an absolute incompatibility, that the special is to remain in force as an exception to the general."

We think the conclusion reached in School District No. 8 v. Home Lumber Co., 97 Okla. 72, 221 Pac. 433, is correct. In that case the school district board entered into an oral contract with the Home Lumber Company to furnish lumber to build a schoolhouse for which bonds had been voted. The Home Lumber Company recovered judgment, and the school district board appealed. One of the questions argued was that the trial court erred in refusing to instruct the jury, in substance, that it was necessary for the plaintiff to have presented to the school board, prior to the institution of the suit,

a verified claim under oath showing the separate items and the nature of each item for which it claimed an indebtedness owing to it. The first paragraph of the syllabus is as follows:

"Where a school district votes bonds to erect a new building, and the district board decides to erect such building on the cost-plus basis plan, in pursuance of which it enters into a written contract with a contractor to pay him 10 per cent. of the cost of the building, up to a certain limited cost, for his services in constructing the building, the district to furnish the lumber and material, and the board orally contracts with another to supply the lumber and material, and after the same is furnished the board denies the existence of the oral contract, the filing by such materialman of a verified claim with such board for such lumber and material is not a condition precedent to an action in court on such contract."

The cases cited in the brief of plaintiff in error are all from other jurisdictions. None of them rest upon a statute similar to the one under consideration.

We conclude that this action may be maintained, but the costs cannot be recovered against the city.

2. The question to be decided is whether section 26, art. 10 of the state Constitution, which provides that:

"No * * * city * * * shall be allowed to become indebted, in any manner, or for any purpose, to an amount exceeding, in any year, the income and revenue provided for such year, without the assent of three-fifths of the voters * * *"

—and those statutes requiring an itemized estimate of the needs of the municipality and each officer and department thereof, for the current fiscal year to be made and filed with the excise board, and prohibiting the creation of any indebtedness in excess of such estimate as approved by the excise board, are applicable to the needs of the city, and indebtedness created by it in the operation of a public utility for the benefit of the municipality and for the sale of light and water to its inhabitants.

There are certain provisions of the state Constitution relating specifically to incorporated cities and towns, and defining their powers with special reference to public utilities. Section 27, art. 10, authorizes any incorporated city or town to become indebted in a larger amount than specified in section 26, for the purpose of purchasing or constructing public utilities to be owned exclusively by the municipality when authorized to do so by a majority of the qualified property taxpaying voters at an election held for that purpose. That section reads:

"Any incorporated city or town in this state may, by a majority of the qualified property taxpaying voters of such city or town, voting at an election to be held for that purpose, be allowed to become indebted in a larger amount than that specified in section 26, for the purpose of purchasing or constructing public utilities, or for repairing the same, to be owned exclusively by such city: Provided, that any such city or town incurring any such indebtedness requiring the assent of the voters as aforesaid, shall have the power to provide for, and, before or at the time of incurring such indebtedness, shall provide for, the collection of an annual tax in addition to the other taxes provided for by this Constitution, sufficient to pay the interest on such indebtedness as it falls due, and also to constitute a sinking fund for the payment of the principal thereof within 25 years from the time of contracting the same."

Section 6, art. 18, specifically empowers municipalities to engage in business enterprises outside of the scope of their ordinary legislative and governmental functions. That section reads:

"Every municipal corporation within this state shall have the right to engage in any business or enterprise which may be engaged in by a person, firm, or corporation by virtue of a franchise from said corporation."

In the case of Edwards v. Miller, 21 Okla. 448, 96 Pac. 747, section 27, art. 10, was held to be a self-executing grant of power to the qualified taxpaying voters of the city or town. That case was followed and approved in Dunnegal v. Town of Red Rock, 58 Okla. 218, 158 Pac. 1170; Denton v. City of Sapulpa, 78 Okla. 178, 189 Pac. 532; Williams v. City of Norman, 85 Okla. 230, 205 Pac. 144.

In the last case cited it was held that section 27, art. 10, "is a grant of power to the people of the municipalities named therein, is complete in itself, and needs no legislation to put it in force"; that the Legislature has no power to abridge or extend its provisions. In State ex rel. v. Short, Atty. Gen., 113 Okla. 187, 240 Pac. 700, it was held that section 26, art. 10 of the state Constitution, is a limitation upon the legislative power to incur debts for the ordinary governmental expenses, and that in determining whether an incorporated city or town has exceeded the debt limit prescribed in section 26, the debts incurred for "public utilities" owned exclusively by such city or town, should be excluded. The fourth paragraph of the syllabus reads:

"Section 27, art. 10, of the Constitution, is a special grant of power to incorporated cities and towns, to incur debts for 'public

utilities' to be owned exclusively by such cities and towns. Such grant of power is con.erred upon incorporated cities and towns only, and is expressly freed from the limitation prescribed in section 26, art. 10."

That case is in entire harmony with and sustained by the authorities generally and by the previous holdings of this court.

The general rule is as stated in McQuillin, Municipal Corporations, vol. 4, page 3860, sec. 1801, as follows:

"In so far as the rights and duties of a municipality which owns its own plant are concerned, the rules which govern private companies are for the most part applicable, as already considered in the preceding chapter. A municipality which owns its own plant cannot ordinarily, while it continues to be the owner thereof, discontinue its operation.

"The general rule is that a municipality, in constructing or in operating its municipal plant, acts in a business, proprietary, or individual capacity rather than in a legislative or governmental capacity; and where it furnishes a supply to private consumers, it must exercise the same care that ordinarily prudent persons engaged in similar business would exercise under like circumstances. So where a municipality constructs and operates a public utility of its own, it is held to the same degree of liability towards its employees as an individual in like circumstances, since it exercises a private and corporate duty as distinguished from a public or governmental function. And where a municipality owns its own plant, it is liable for injuries sustained by a consumer by reason of an insufficient supply."

In the case of Fretz v. City of Edmond, 66 Okla. 262, 168 Pac. 800, the second paragraph of the syllabus reads as follows:

"Municipal corporations in operating a water plant exercise business and administrative functions, rather than those strictly governmental in their nature, and in the exercise of such functions are governed largely by the same rules applicable to individuals or private corporations engaged in the same business."

In that case this court quoted with approval from the case of Illinois Trust & Savings Bank v. City of Arkansas City, 76 Fed. 271, 34 L. R. A. 518, as follows:

"A city has two classes of powers,—the one legislative, public, governmental, in the exercise of which it is a sovereignty and governs its people; the other, proprietary, quasi private, conferred upon it, not for the purpose of governing its people, but for the private advantage of the inhabitants of the city and of the city itself as a legal personality. In the exercise of the powers of the former class, it is governed by the rule here invoked. In their exercise it is ruling its people, and is bound to transmit its powers of government to its successive sets of officers unimpaired. But in the exercise of the powers of the latter class it is controlled by no such rule, because it is acting and contracting for the private benefit of itself and its inhabitants, and it may exercise the business powers conferred upon it in the same way, and in their exercise it is to be governed by the same rules that govern a private individual or corporation." (Citation of cases omitted.)

Fretz v. City of Edmond, supra, was followed in Moomaw et al. v. Sions, 96 Okla. 202, 220 Pac. 865.

Having concluded that section 26, art. 10 of the state Constitution, is not controlling, we will next consider the statutes referred to.

Section 9695, C. S. 1921, provides that the mayor and councilmen of each city, or the officers exercising like power in any city having a charter form of government, shall meet on the first Monday in July of each year and make in writing a financial statement showing the true fiscal condition of their respective municipalities as at the close of the previous year, and an itemized statement of estimated needs and probable income from sources other than ad valorem taxes for the current fiscal year. The financial statement shall be supported by schedules or exhibits showing by classes the amount of all receipts and disbursements. The statement of estimated needs shall be itemized so as to show by classes, first the several amounts necessary for the current expense in each municipality in each office or department thereof; second, the amount required by law to be provided for a sinking fund; third, the probable income that will be received from all sources other than ad valorem taxes, and shall be detailed in form and amount so as to disclose the several items for which the excise board is authorized and required to approve estimates and make appropriations. The estimates so made out and published shall then be certified to the excise board of the county.

By section 9698, it is made the duty of the excise board to examine the financial statement for the previous fiscal year, as submitted, and ascertain its true fiscal condition at the close of the preceding year; to examine the statement of estimated needs for current expenses for the current fiscal year, as certified, and to determine the items and amounts for which appropriations should be made in detail as to each officer, board or department. It is given the power and authority to revise and correct any estimate by striking items therefrom, increasing or decreasing the items thereof, or adding items

thereto when, in its opinion, the needs of the municipality shall require, with certain restrictions not necessary to be considered. When the excise board shall have examined, revised, and adjusted the items of the respective estimates and ascertained its separate items and the needs of each, if the same shall be within the limits for current expenses as provided by law, it is required to approve the items and appropriate the respective amounts for the purposes so found to be necessary. The appropriations made for the use of each separate office, board, commission or department, are required to be stated in separate items, and no appropriation shall be available for the use of more than one office, board, commission or department.

Subdivision B of that section provides:

"The appropriations for city and towns shall be itemized so as to show the amount of funds appropriated for the several offices, boards, commissions and departments, and shall be detailed in separate items as to each thereof, as follows: For salaries and compensation of each officer and all regular deputies employees thereunder; for special services and extra help; for office supplies, blank books, stationery and printing; for postage, telephone, and telegraph; for express, freight, and drayage; for light, fuel, and water; for rent; for charities and aid to poor; for furniture and office equipment, for maintenance, renewals, and extensions; for purchase of park, building sites, and other real estate, with appropriation for each, separately stated; for construction of new buildings, with the appropriation for each proposed building, separately stated; for maintenance and repairs on buildings and parks; for park and other permanent improvements with the appropriation for each, separately stated; for equipment and apparatus; for such other expenditures as may be necessary and authorized by statute or ordinance, but not herein enumerated."

It will be observed that by subdivision B, no provision is made for any item of the appropriation to be used in the operation of a public utility. The items specified are those deemed necessary for the current expenses of the municipality in the exercise of its governmental and legislative functions only. By subdivision E of the same section the excise board is required to ascertain and appropriate the amounts required by law to be raised annually for a sinking fund to be used for the payment of coupons and bonds as they fall due and for the payment of judgments.

After approving the estimate and ascertaining the total assessed valuation of the property within the municipality, it is required by section 9699 to make the levy to raise the amount required by the estimates, as approved, after deducting the amount on hand, and the probable income from all sources other than ad valorem taxes.

These provisions of the statute are in the chapter relating to revenue and taxation. They relate to needs for governmental purposes to be provided for by an ad valorem tax, where the probable income from all other sources is insufficient. The sole purpose of the creation of the excise board appears to have been to provide a board whose sole duties are to levy the necessary ad valorem taxes to meet the needs of the various subdivisions of the state, and to keep such levies within the limitations fixed by the Constitution and the various statutes in matters relating to governmental affairs.

We find no language in the statute from which it may be inferred that it was the intention of the Legislature to authorize or empower the excise board to exercise any supervisory control over the expenditures of incorporated cities and towns in the operation of public utilities owned exclusively by such municipalities.

The judgment is affirmed at the cost of the defendant in error, both in this court and in the trial court.

By the Court: It is so ordered.