## TOWN OF HOMINY v. McFARLAND.

No. 5548. Opinion Filed January 8, 1916.

Rehearing Denied February 15, 1916.

(154 Pac. 1128.)

**MUNICIPAL CORPORATIONS—Action for Services—Direction of Verdict—Evidence.** The court did not commit error in instructing a verdict for plaintiff, for the reason that his claim was fully established by the evidence, and there was no evidence reasonably tending to establish the counterclaim set up as a defense.

(Syllabus by Brewer, C.)

*Error from District Court, Osage County;*
*R. H. Hudson, Judge.*

Action by L. Y. McFarland against the Town of Hominy. Judgment for plaintiff, and defendant brings error. Affirmed.

*Grinstead & Scott,* for plaintiff in error.

*J. T. Shipman,* for defendant in error.

Opinion by BREWER, C. Defendant in error, McFarland, brought this suit against the town of Hominy to recover a balance alleged to be due him on account of certain labor performed as construction or inspection engineer, in connection with the erection of a water and sewer

system for the town. The defense relied upon was that of a counterclaim in a sum more than sufficient to wipe out the amount due to plaintiff. At the close of the trial the court instructed the jury to return a verdict in favor of McFarland, evidently upon the ground that there was no evidence to support the counterclaim; and this action of the court is the point urged here for a reversal of the case.

Some time in 1909 the town of Hominy made a contract with the plaintiff, by which it employed him to draw plans for a waterworks and sewerage system, and to act as consulting and supervising engineer in the construction of same, and for the inspection of the material therefor, in which contract the town agred to pay to plaintiff $150 for the plans, and to allow him 8 per cent. on the cost of constructing the works. Bonds were voted to provide funds for these purposes, and they were issued. During this time plaintiff prepared plans in detail for these public improvements, and they were accepted and adopted by the board of trustees of the town. Through the advice of plaintiff, the town also contracted for a large amount of the machinery and material necessary for the improvements. In the meantime bids were advertised for and a number received. About this time, however, it became apparent to the town that there was no market for the bonds, and that therefore it would be without funds to construct the improvements. After this condition was discovered a man by the name of O'Neil appeared upon the scene and entered into negotiations with the town authorities, through which it was finally agreed that he should put in a system of waterworks and sewerage for a stated sum, taking and using the materials the town had bought, and would take the bonds in payment therefor. He re-

fused, however, to build the improvements under the plans and specifications previously adopted, and as prepared by the plaintiff. In making his contract he submitted plans and specifications of his own, which were adopted by the town authorities. When these negotiations were nearing completion a new arrangement was entered into between the town and plaintiff, through which his former contract was abrogated, and he agreed to supervise and inspect the work to be performed by Mr. O'Neil under the new plans for a commission of 5 per cent. on the cost of the improvements. Under this arrangement the improvements were put in and paid for, and, in so far as the record shows, were in every way satisfactory. Plaintiff performed his duties under the new arrangement of supervising and inspecting the work as it progressed. Partial payment on account for his services was made from time to time, leaving the balance due him as sued for, unless the counterclaim should be allowed. This counterclaim rests upon the claim that under the original plans drawn by plaintiff, the entire town was to be covered with water and sewer pipes, but that under the plans submitted by O'Neil, and under which the improvements were put in, two tiers of blocks on the outskirts of the town were omitted; and after the original contract had been fulfilled by Mr. O'Neil this was discovered, and the extensions to these two tiers of blocks were then made by O'Neil, under a supplemental contract, and involved an additional expenditure of something over $700. Plaintiff's liability for this amount is predicated upon the claim that he, at the time the O'Neil plans were up for consideration, stated in reply to inquiry of the trustees that these plans were substantially like the ones he had drawn, differing only in unimportant details.

The court, after hearing all the evidence, must have arrived at the conclusion, and we think correctly, that there had been shown no liability upon the part of plaintiff for the amount of this extra expenditure in carrying the water and sewerage into these two tiers of blocks. There is nothing in the record, nor, for that matter, in the pleadings, that in any way tends to show that the town did not receive full value in the way of improvements for all the bonds paid O'Neil, or that, if the two extra tiers of blocks had been in the plans under which he worked, he would not have charged, and been entitled to charge, as much more for thus extending the system as it, in fact, cost the town to have it done. It will be remembered that O'Neil, for some reason, refused to take the bonds on hand and put in such a system as was called for by the plans drawn by plaintiff, but that he was willing to put in the system his own plans called for, and take therefor a certain amount of the bonds. There is nothing to indicate that, if the plaintiff or the town authorities had known, or called O'Neil's attention to the fact, that his plans did not take in as much territory as the former ones, O'Neil would have thus enlarged his plans and done the extra work for the same price. On the contrary, there are inferences that would lead to an opposite conclusion. If the town got full value—and, so far as the record shows, it did—in the system put in by O'Neil, then it is hard to see just how or why it is damaged by an enlargement of the system, which occasioned the expenditure of the money set up here as a counterclaim. Nor is there anything to show that, if the town trustees had been aware, at the time they were negotiating with O'Neil, as they claim they were not, that these tiers of blocks had been omitted, they would not have

gone on and made the contract just as they did, with them omitted, paying him the same amount of bonds they did. So, taking it from any viewpoint, we fully agree with the trial court that the counterclaim urged against plaintiff in this case has not been established as an obligation against him, and was properly disallowed.

There being no other points of importance urged, it follows that the case should be affirmed.

By the Court: It is so ordered.