## RUTH v. OKLAHOMA CITY et al.

No. 20840. Opinion Filed April 1, 1930.

Rehearing Denied April 29, 1930.

C. H. Ruth, for plaintiff in error.

M. W. McKenzie, Municipal Counselor, A. L. Hull and G. B. Fulton, Assistants, for defendants in error.

HEFNER, J. Chas. H. Ruth, the plaintiff in error, brought this action on behalf of himself and other taxpayers of the city of Oklahoma City against the city of Oklahoma City, wherein he sought an injunction to prevent the city from selling certain bonds which had been authorized by an election in Oklahoma City to provide funds for the purpose of acquiring, owning, maintaining, and beautifying real property for public parks, with the privilege of locating thereon aviation airports with all necessary and proper equipment, buildings, and appurtenances. The ordinance authorized the issuance of bonds for the purposes above mentioned in the principal sum of $425,000.

The defendants challenged the petition by demurrer. The demurrer was sustained by the trial court, the plaintiff declined to plead further, and judgment dismissing plaintiff's action was entered. The action of the trial court in sustaining the demurrer to the petition is now before us for review.

It is alleged that the ordinance authorizing the calling of the election and the election proclamation were published in the Daily Record, and that the Daily Record is not a newspaper of general circulation, but one of very limited circulation and devoted to court and real estate news, and that the circulation is confined to real estate dealers and attorneys at law.

It is also charged that the ordinance embraces more than one subject and is in violation of section 2, article 5, of the charter of the city of Oklahoma City, and that the subjects attempted to be set forth in the title constitute duplicitous propositions, and that the ordinance, for that reason, is void.

It is further alleged that the defendant city is without authority to spend money in the construction and maintenance of airports, or aviation fields.

A portion of the order of the trial court sustaining the demurrer is as follows: .

" * * * The court, being fully advised in the premises, finds that but a single subject was set up in the title of the ordinance complained of, and that the people, the qualified taxpaying voters of the city of Oklahoma City, were fully advised and notified of what they were to vote upon at the said election, and that the said defendants have the power under the charter of the said city to issue its bonds for the purpose of providing funds for the purchase of lands for public park purposes, with the privilege of locating thereon aviation airports, with all necessary and proper equipments, buildings and appurtenances thereto and that the amended petition of the plaintiff does not state a cause of action entitling the plaintiff to the relief prayed, and that the demurrer of the defendants should be sustained."

The specifications of error may be briefly stated as follows:

(1) That the court erred in holding and finding the taxpaying qualified voters of the city were sufficiently advised and notified of what they were to vote upon at the election complained of in the plaintiff's petition.

(2) That the court erred in holding and finding that but a single subject was contained in the title of the ordinance.

(3) That the court erred in holding that the defendants have the power under the charter of the city to issue its bonds for the purpose of providing funds for the acquisition of lands for park purposes with the privilege of locating thereon aviation airports, with all the necessary and proper equipment and buildings.

Section 4392, C. O. S. 1921, provides that the proclamation shall be published in a newspaper of general circulation. It is claimed that the Daily Record is not a newspaper of general circulation. Certainly, the Legislature intended that before bonds were issued general publicity should be given to the taxpayers of the proposed issuance of the bonds. This should always be done. It is not alleged, however, that the electors did not have actual notice of the proposed bond issue, and by reason thereof failed to par-

ticipate, nor that the result of the election would have been changed if the notice had been given to all the qualified electors.

In the case of Ratliff v. State, 79 Okla. 152, 191 Pac. 1038, this court said:

"Where a special election is assailed on the ground of lack of compliance with all of the statutory requirements in reference to notice, but there is no averment or showing that the electors did not have actual notice or knowledge of the election and failed to participate therein by reason thereof, the same will not be held void on this account."

Again, in the case of Town of Grove v. Haskell, 24 Okla. 707, 104 Pac. 56, it was said:

"* * * The vital and essential question in such cases is, Did the want of notice or knowledge result in depriving a sufficient number of the electors of the opportunity to exercise their franchise as to change the result of the election? If not, then the will of the electors, as expressed, should be sustained."

Under the rule announced in these cases we do not think the election was void because the ordinance and proclamation were published in the Daily Record.

It is urged that the court committed error in holding that but a single subject was contained in the title of the ordinance. Section 2, article 5, of the charter provides in part that every ordinance shall embrace but one subject, which shall be clearly expressed in the title. In 25 R. C. L. 847, in discussing the provision that an act shall embrace but one subject, which shall be clearly expressed in the title, it is said:

"* * * The intention doubtless is to prevent embracing in an act having one ostensible object provisions having no relevancy to that object, but really designed to effectuate other and wholly different objects, and thus to conceal and disguise the real object proposed by the provisions of an act under a false or deceptive title."

Does the ordinance contain but one subject, and is it clearly expressed in the title? The title is as follows:

"An ordinance outhorizing the calling and holding of an election in the city of Oklahoma City, Oklahoma county, state of Oklahoma, for the purpose of submitting to the qualified property taxpaying voters of said city the question of the issuance of the bonds of said city in the sum of four hundred twenty-five thousand and no-100 ($425,000) dollars, to provide funds for the purpose of acquiring, owning, maintaining and beautifying real property for public parks with the privilege of locating thereon aviation airports, with all necessary and proper equipments, buildings and appurtenances thereto,

to be owned exclusively by said city; levying and collecting an annual tax in said city for the payment of the interest on and principal of said bonds; and declaring an emergency."

It is claimed that there is not only a duplicity of subjects, but a discretionary power attempted to be vested in the city officers not conferred upon them by any charter provision. To constitute duplicity the act must embrace two or more dissimilar and discordant subjects which, by no fair intendment, can be considered as having any legitimate connection with or relation to each other. We do not think the ordinance is duplicitous.

In the case of Bartlesville Elec. L. & P. Co. v. Bartlesville Interurban Ry. Co., 26 Okla. 453, 109 Pac. 228, this court said:

"The requirement of a statute that the subject of any ordinance enacted by a city council shall be clearly expressed in the title is complied with where the title calls attention to the general subject of the legislation in the ordinance, and does not tend to mislead or deceive the people or council as to the purpose or effect of the legislation, or to conceal or obscure the same."

Again, this court, in the case of In re Dawson, 136 Okla. 113, 277 Pac. 226, said:

"It is not necessary for the title of an act to embrace an abstract of its contents, and if an act has numerous provisions and such provisions have one general object, the title is sufficient if it fairly indicates the general purpose of the act."

The general purpose of the ordinance was to determine whether or not the city should issue bonds in the sum of $425,000 in order that it might acquire property for parks, with the privilege of locating airports thereon. We think the title to this ordinance has but one general subject, and that it is fairly indicated in the title.

In the third specification of error it is urged that the court committed error in holding that the defendant city has power, under its charter, to issue its bonds for the purpose of providing funds for the acquisition of lands for park purposes, with the privilege of locating aviation airports thereon. The petition alleges that section 5, article 1, of the charter provides:

"Said city shall have the power within its territorial limits, and within 15 miles from the said limits, to construct, condemn and purchase, acquire, lease, improve, add to, maintain, conduct and operate in whole or in part waterworks, light plants, telephone system, power plants, transportation system, heating plants, incinerating plants and

other public utilities or works or ways local in use."

This section does not specifically mention parks, but in the case of Ardmore v. State, 24 Okla. 862, 104 Pac. 913, a park was held to be a public utility. There this court said:

"* * * Plaintiffs in error contend that public parks are not public utilities. In Barnes et al. v. Hill, 23 Okla. 207, 99 Pac. 927, it is held that a public park is a public utility within the meaning of that term as used in section 27, art. 10, of the Constitution, and that bonds issued for the purpose of constructing improvements therein, such as walks and driveways, are authorized by this section of the Constitution. Under the doctrine of that case the contention of plaintiffs in error cannot be sustained."

In the case of McClintock v. City of Roseburg (Ore.) 273 Pac. 331, the Supreme Court of Oregon held that the establishment and maintenance of an airport by a municipality was a public enterprise, for which the municipality could issue its bonds. There it was said:

"* * * Transportation by air appears to be increasing so rapidly that we may confidently expect that soon a large portion of the mail and express will be transported by aeroplane. An airport owned by the city open to the use of all aeroplanes is for the benefit of the city as a community, and not of any particular individuals therein. It is therefore a public enterprise.* * *"

In the case of City of Wichita v. Clapp (Kan.) 263 Pac. 12, it was held that the use of a reasonable portion of a public park for an aviation field comes within the legitimate uses for which public parks are created. In that case the Supreme Court of Kansas said:

"The devotion of a reasonable portion of a public park to airport (aviation field), for recreation and other attendant purposes, comes within the proper and legitimate uses for which public parks are created."

In the Wichita case it was expressly held that land acquired for park purposes by the city could include an airport or landing field for airplanes. Since the city of Oklahoma City had authority to issue its bonds for the purpose of acquiring a park, under the rule announced in the Wichita case, it follows that it has authority to devote a reasonable portion of the park for use as an aviation field.

It is urged that before the bonds could be issued it would be necessary for the city to amend its charter. Section 1, article 1, of its charter provides that the city shall have power:

"To hold, lease, mortgage, convey or otherwise dispose of any of its property, real or personal, within and without the limits of said city, and it shall have such other powers, rights, privileges, franchises and immunities as are granted and conferred by any other parts of this charter or by the Constitution and the laws of the state of Oklahoma."

This section clearly provides that the city shall not only have the powers specifically granted in the charter, but that it shall have such other additional powers, rights, privileges, franchises, and immunities as are granted and conferred by the Constitution and laws of the state of Oklahoma. Section 3, article 1, of the charter, in part, provides:

"Said city shall also have all other powers that may hereafter be given it by the Constitution and the laws of this state. * * *"

When the people of Oklahoma City adopted the charter it was undoubtedly the intention to give the city authority to do all those things expressly granted it in the charter, and, in addition thereto, to give it authority to do all those things the Constitution and general laws of the state at that time authorized it, as a municipality, to do that were not specifically conferred in the charter, and to give it authority to do all those things that it, as a municipality, might be authorized to do by any amendments that might be made in the future to the Constitution or by any future acts of the state Legislature.

In 1929 the Legislature amended section 4507, C. O. S. 1921, so it now reads as follows:

"Every municipal corporation within this state shall have the right to engage in any business or enterprise which may be engaged in by a person, firm, or corporation by virtue of a franchise from said corporation; and every city containing a population of more than 2,000 inhabitants shall have the right and power to acquire, own, and maintain, within or without the corporate limits of such city, real estate for sites and rights of way for public utility and public park purposes, and for the location thereon of waterworks, electric light and gas plants, aviation airports, hospitals. * * *" Session Laws of 1929, c. 11, p. 10.

When this act became effective, under the provisions of the charter of the defendant city it could do all of those things authorized in the act, unless it was prevented from exercising the authority thereby granted by some provision of its charter. There is no such prohibition.

Whether or not an aviation airport is a public utility is not now before us for con-

sideration. If it is a public utility, then bonds for airport purposes could be issued under section 27, art. 10, of the Constitution. If it is not a public utility, then they can only be issued within the limitation contained in section 26, art. 10, of the Constitution. As to this question, we are expressing no opinion.

The judgment of the trial court is affirmed.

MASON, C. J., and HUNT, RILEY, CULLISON, SWINDALL, and ANDREWS, JJ., concur. CLARK, J., dissents. (For dissenting opinion, see 143 Okla. 266.)

Note.—See under (1) 9 R. C. L. p. 990, et seq.; R. C. L. Perm. Supp. p. 2585. (2) 19 R. C. L. p. 815; R. C. L. Perm. Supp. p. 4719. See "Municipal Corporations," 43 C. J. §551, p. 420, n. 65; §805, p. 523, n. 46; 44 C. J. §4178, p. 1204, n. 46.