## STATE ex rel. WOODS v. COLE et al.

No. 25330. Sept. 29, 1936.

Rehearing Denied Nov. 24, 1936.
Second Petition for Rehearing
Denied Jan. 5, 1937.

W. H. Woods, for plaintiff in error.

Embry, Johnson, Crowe & Tolbert and Armstrong & Murphy, for defendants in error.

Joseph C. Stone, amicus curiae.

WELCH, J., The plaintiff here seeks to recover judgment for himself and for the city against the governing officers of the city, and Cole. under the penalty statutes, sections 5964 and 5965, O. S. 1931, upon the theory that the said city officials entered into an illegal contract of employment with Cole, resulting in his illegally receiving a portion of sums ascertained by him to be due, and collected by him for the city.

The essential facts are as follows: The city owned various lands which in past years it had leased for oil and gas to various persons, upon the usual terms as to royalty to be paid the city out of the oil recovered. Numerous producing wells had been drilled and much royalty had been collected by the city. The field in and adjacent to the city was very productive, there being many hundreds of producing wells.

In August, 1933, it was evidently the conclusion of the governing officers of the city that the usual collection methods had probably not brought in to the city its full share of royalty collections on oil produced from its lands. The oil production had not been uniform, constant, and regular. Production had been curtailed under state conservation and proration. Wells had produced at different capacities at different times. Wells had been closed down at times and permitted to produce at times. Some difficulties in the field had resulted in martial law, and some confusion had existed as to oil produced, and as to production reported throughout the field.

On August 5, 1933, the contract here involved was entered into. It was drafted at length, approved by the municipal counselor, and executed by the city and Cole. The terms were, in substance, that the city employed Cole upon a contingent basis to investigate, search for, and if possible to discover back oil production upon which the city had not been able to collect royalty, and to collect any such back royalty for the city. There were many city lots under lease, and several other tracts of land which were specifically excepted from the contract, indicating that as to those items the city was able to handle the royalty matter with its ordinary officers, employees, and facilities. The contract with Cole was limited to apply only to back oil productions, that is, to oil produced prior to May 31, 1933, indicating no desire on the part of either Cole or the city that Cole should work on current royalty collectible by the city in the usual course of business through its own regular facilities. The contract expressly recognized the fact that Cole had special facilities for the discovery of unreported oil runs, and for the collection of back royalties. The contract provided that Cole should receive 25 per cent. of all such back collections made by him for the city, within the limits of the contract.

Reference in the briefs is made to the fact that Cole had an organization of trained men, and had specially prepared himself to render such services as this to royalty owners, but aside from any such statements in the briefs, his facilities for doing the work are recognized in the contract, and demonstrated by the fact that he did make substantial collections of such back royalty for the city. These collections were, by resolution of the city officers, divided three-fourths to the city and one-fourth to Cole, agreeable to the terms of the contract.

It is not disputed that the city benefited greatly from the contract, nor is it contended

specifically that the compensation paid was more than Cole's services were worth. The plaintiff's case is based upon the theory that the contract was illegal, and everything done under it was illegal for lack of authority in the city to so contract.

It is not contended that there was any actual fraud practiced in the making of the contract. The petition does refer to the contract as being "a certain unlawful and fraudulent contract," and as being "fraudulent in law," and as being in open violation of the provisions of the Constitution of the state. The petition further states that Cole secured the contract "by the practice of deceit and fraud on the part of the defendant, Cole, on the six defendant members of the city council." It will be noticed that these statements are pure conclusions. No facts whatever are pleaded showing fraud or deceit by anyone. And from a reading of the entire petition it is apparent that these statements are but complementary to plaintiff's allegations and contention that the contract was illegal for lack of authority in the city to make it.

Of course, if the contract was illegal, then the plaintiff would be entitled to recover, under the appropriate statutory enactments, without showing actual fraud.

The plaintiff urges that, since the city had its governmental officers, and its auditor, and its policemen and detectives, and its attorney, no authority existed to employ Cole in the capacity indicated by the contract.

In determining the question we must bear in mind that the city was here acting in its proprietary capacity as distinguished from its governmental capacity.

In Audit Company of New York v. City of Louisville, 185 Fed. 349, it was determined that:

"Where a city is exercising the rights of a proprietor in the management of its property, its powers are not so strictly limited as when acting in its governmental capacity, but its council and officers resemble the directors and officers of a private corporation, and in large degree the powers of these agents and the responsibility of the city for their acts are governed by the rules applicable to private corporations."

In Illinois Trust & Savings Bank v. City of Arkansas City. 76 Fed. 271, 22 C. C. A. 171, 34 L. R. A. 518, it was said:

"A city has two classes of powers,—the one legislative, public, governmental, in the exercise of which it is a sovereignty and governs its people; the other, proprietary, quasi private, conferred upon it, not for the purpose of governing its people, but for the private advantage of the inhabitants of the city and of the city itself as a legal personality. In the exercise of the powers of the former class, it is governed by the rule here invoked. In their exercise it is ruling its people, and is bound to transmit its powers of government to its successive sets of officers unimpaired. But in the exercise of the powers of the latter class it is controlled by no such rule, because it is acting and contracting for the private benefit of itself and its inhabitants, and it may exercise the business powers conferred upon it in the same way, and in their exercise it is to be governed by the same rules that govern a private individual or corporation. (Citation of cases omitted.)"

This court recognizes the distinction between proprietary and governmental capacity, and quoted the above statement with approval in Fretz v. City of Edmond, 66 Okla. 262, 168 P. 800; and in City of Pawhuska v. Pawhuska Oil & Gas Co., 118 Okla. 201, 248 P. 336. That distinction is also recognized in Maney v. Oklahoma City, 150 Okla. 77, 300 P. 642, and in Oklahoma City v. Baldwin, 133 Okla. 289, 272 P. 453.

We know, of course, that Oklahoma City has the right to make a contract, to take and acquire property, and to hold, lease, convey, or otherwise dispose of any of its property, real or personal, and has such other powers, rights, and privileges as are granted by its charter or by the Constitution and laws of the state. These rights and powers were recognized in Ruth v. Oklahoma City, 143 Okla. 62, 287 P. 406, where it was held in paragraph 3 of the syllabus:

"The city of Oklahoma City is authorized by its charter to hold, lease, mortgage, convey or otherwise dispose of any of its property, real or personal, within and without the limits of said city, and is granted such other powers, rights, privileges, franchises and immunities as are granted and conferred by any other parts of its charter or by the Constitution and laws of the state, and it is further granted all other powers that may be given it by the Constitution and laws of the state. * * *"

In this state cities are given wide powers of engaging in business or enterprises. Section 6, art. 18, Constitution; section 6350, O. S. 1931.

It seems clear that from expressed grants of power there may arise implied powers to do the things necessary and proper to the complete enjoyment of the powers expressly granted. Since the city had the right to lease

its lands for oil and gas, it had the right to collect the stipulated royalties, and it would seem to follow that it had the right to do whatever was reasonably necessary, under the existing conditions, to collect the royalties and thereby fully enjoy the right to lease.

Good business would dictate that a city should manage any enterprise entered into with economy, but nothing is presented to limit the city only to its governmental officers, in searching for and collecting its back oil royalties on unreported oil runs when in keeping with good business management additional diligence and effort is indicated to be necessary to avoid great loss. There is no express grant of power to enter into such a contract as the Cole contract, nor express restrictions from so doing.

This court held in Board of Education v. Thurman, 121 Okla. 108, 247 P. 996, that a municipal corporation has power and authority to employ an attorney when necessary, in the absence · of express restrictions, and that this authority is implied from the power to make contracts and to own property. In that case the municipality had no regular attorney, it is true, but in Board of County Commissioners v. Waldrep, 150 Okla. 228, 1 P. (2d) 711, we upheld the right of a county to employ an attorney to represent the county in federal court, since the law did not expressly make it the duty of the regular county attorney to appear for the county in federal court. It is apparent there that while there was no express authority, neither was there any express denial of such authority, and the power was held to be necessari'y implied. It is held that as to certain services, and generally, the county cannot employ an attorney as in Board of Com'rs v. Jones, 4 Okla. 341, 51 P. 565, and Board of County Com'rs v. King, 147 Okla. 34, 294 P. 101, but that is true on 'account of affirmative provisions of law as pointed out in those cases. So in Board of Education v. Thurman, supra, it was held as to certain services there was no authority to employ an attorney on account of affirmative provisions of the law.

In Treeman v. City of Perry, 11 Okla. 66, 65 P. 923, the action of the city council in employing an attorney was upheld. The court there noticed the general grants of authority to cities and then said:

"This last section contains a pretty broad grant of power, but even conceding, for the sake of argument (but we do not admit it as a fact) that it does not embrace express authority to employ an attorney, it must also be admitted that the council are neither expressly nor impliedly prohibited from doing so, and the general rule is that a city council may employ an attorney by ordinance to assist the city attorney, unless expressly or by clear implication prohibited in its charter or by some act of the Legislature."

Further in the body of the opinion is discussed the general rule of authority of a municipality as to contracts of employment, in the absence of express prohibition, or unless prohibited from so doing by clear implication.

That general rule is also followed in City of Holdenville v. Lawson, 40 Okla. 38, 135 P. 405.

A town may employ an engineer to draw plans. Town of Hominy v. McFarland, 55 Okla. 419, 154 P. 1128.

The District Court of Appeals of California in Miller v. Boyle, 184 P. 421, held that a city under its implied powers could contract with architects.

In Child v. Board of Com'rs of City of Newark (N. J.) 151 Atl. 203, the city having power to lease lands, it was held to also have the authority and power to employ the necessary real estate brokers, and in Stewart v. City of Council Bluffs (Iowa) 12 N. W. 718, a contract for special services was held not beyond the power of the city to make.

The rule is well stated by the Supreme Court of Connecticut, in Bridgeman v. City of Derby, 132 Atl. 25, wherein it was held:

"Municipal corporations, in addition to powers expressly granted, have such others as are necessarily implied or incidental to those granted, and also all powers indispensable to attainment· and maintenance of declared objects and purposes."

In the body of the opinion it was forcefully pointed out that contracted employments which at one time might not be necessary might under different circumstances or changed conditions become necessary or indispensable to the attainment of desired and declared objects and purposes.

It has been held in some states that a city may contract with a private person as to collection of back taxes and as to discovery of unlisted taxable property. See City of San Antonio v. Raley (Tex. Civ. App.) 32 S. W. 180, City of Richmond v. Dickinson (Ind.) 58 N. E. 260, and City of Richmond v. Clifford ·(Ind.) 103 N. E. 789, 105 N. E. 385. The rule as to matters of taxation would in large measure be different in .this

state on account of our provisions of law as to taxation, but those decisions are interesting in the length to which they go in upholding contracts deemed to be necessary and proper by the governing officers of cities.

It is not asserted that the city acted unwisely in making the Cole contract—the contract is attacked as being illegal and beyond the power of the city to make it. The question whether it was good business or a wise move to so employ Cole was a question in the first instance to be determined by the city officials. Their conclusion that the contract was necessary and an act of wisdom is supported by the results produced.

The plaintiff attacks that provision of the contract fixing a contingent compensation at a percentage of the amounts collected. There again is a question which was to be determined by the officers of the city in their sound business judgment. If measured by the accomplished results it may be that a fixed sum as compensation would have been advantageous to the city. Of course, if no unpaid back royalty had been discovered and collected, then a fixed sum as compensation would have been disadvantageous to the city. Payment for personal services contingent upon success, or contingent as to the amount ultimately payable, is well recognized in proper cases. That plan is often observed in the employment of attorneys, collectors, brokers, architects, and others. In some instances it is specifically authorized by statute. Several of the cases above cited uphold that plan of payment by municipalities for certain services. No reason is shown here why that method of payment would vitiate or affect the employment of Cole under the contract here involved, or affect the power of the city to make the contract.

The plaintiff attacks this contract as being void as against public policy. We have held specifically that an agreement to pay a contingent fee is not against public policy in Culver v. Diamond, 64 Okla. 271, 167 P. 223.

Executed contracts should not be held void as against public policy, unless the court is without doubt clearly and positively directed to that conclusion. In Huber v. Culp, 46 Okla. 570, 149 P. 216, this court held as follows:

"In order to declare a contract against public policy, and void, it must conflict with the morals of the times or contravene established interests of society, as deduced from the Constitution, laws and judicial decisions.

"Power of the court to declare a contract void as being in contravention of public policy is a very delicate and undefined power, and should be exercised only in cases free from doubt."

That opinion was cited with approval as to this rule in the more recent case of Warren v. Dodrill, July 2, 1935, 173 Okla. 634, 49 P. (2d) 137.

Plaintiff contends that the contract is void because it authorizes Cole to bring suits in the name of the city against royalty debtors who refuse to pay. The defendants contend that the contract grants no such authority, but, on the contrary, that if legal action was necessary in any case, the same was to be instituted and prosecuted by the city, with the aid and assistance of Cole. The latter construction of the contract is the better supported when the contract is considered as a whole. Furthermore, no effort has been made by Cole to institute any such action, nor has he claimed to have that authority. The collections made by him, which form the basis for this penalty action and fix the sum sued for, were made without any suit. It is not necessary to further notice this contention.

The plaintiff seeks to recover as a penalty double the sum collected by Cole as his 25 per cent. of the total collected by him from back royalties.

In the trial court a demurrer was sustained to plaintiff's petition. A copy of the contract is pleaded, also actions and resolutions of the city council in reference to the execution of the contract, and in reference to proceedings under the contract, and correspondence in reference to the contract. From a consideration of all the exhibits and the allegations of the petition, we conclude that the contract, in so far as here involved, is not void as against public policy, that it was within the power of the city to make it, if in the minds of the governing officers of the city in the exercise of their sound business judgment it was justified and necessary, under the existing circumstances and conditions.

It follows that the demurrer was properly sustained and that judgment is affirmed.

BUSBY and CORN, JJ., and C. W. CAMERON and A. G. C. BIERER, Jr., Special Justices, concur.

McNEILL, C. J., and RILEY and GIBSON, JJ., dissent.

OSBORN, V. C. J., and PHELPS, J., disqualified and not participating.

572

BAYLESS, J., absent.

GIBSON, J. (dissenting). I cannot concur in the majority opinion.

This action was commenced in the district court of Oklahoma county by W. H. Woods, a resident taxpayer, hereinafter referred to as plaintiff, against H. E. Cole and certain individual members of the city council of Oklahoma City, hereinafter referred to as defendants. The action was brought under the authority of sections 5964 and 5965, O. S. 1931, whereby plaintiff seeks to recover on behalf of himself and the city a sum double the amount paid to Cole by the council for services rendered by Cole under the terms of an alleged void contract of employment entered into by the council in behalf of the city with the said Cole. This appeal is here from the judgment of the trial court sustaining defendants' demurrer to the petition and dismissing the action.

The petition charges that the contract in question was entered into on August 5, 1933; that by the terms thereof the defendant councilmen purported to employ defendant Cole to make investigation of certain oil producing lands belonging to the city and to discover and collect any unpaid royalties found due the city on account of the oil produced therefrom prior to May 31, 1933. Cole's fee as fixed by the contract was 25 per cent. of the sum collected by him. The sum so received by Cole was $17,662.84.

We are concerned with the one question, whether or not the petition states a cause of action.

Summed up, the allegations are that the contract was ultra vires, prohibited by the Constitution, the statutes, and the city charter; that the execution thereof constituted constructive fraud. The petition, in our opinion, contains a sufficient statement of essential facts relating to the contract, the acts done thereunder, and its alleged validity to enable us to determine the questions which are decisive of this case. Section 26, art. 10, of the Constitution provides:

"No county, city, town, township, school district, or other political corporation, or subdivision of the state, shall be allowed to become indebted, in any manner, or for any purpose, to an amount exceeding, in any year, the income and revenue provided for such year, without the assent of three-fifths of the voters thereof, voting at an election, to be held for that purpose. * * *"

In State ex rel. Edwards v. Millar, 21 Okla. 448, 96 P. 747, we held that the quoted section of the Constitution is a limitation on the power of the Legislature. The holding in that case has been uniformly followed by us. Legislative enactments which followed the adoption of the Constitution disclose a legislative intent to provide every possible safeguard for the preservation of public funds in the hands of public officials, and to insure their proper and lawful disbursement. Sections 5948, 5950, 5953, 5955, and 5956, O. S. 1931. The cited statutes and the quoted constitutional provision have been strictly construed. Fairbanks Morse Co. v. City of Geary, 59 Okla. 22, 157 P. 720; Wilson v. City of Oklahoma City, 120 Okla. 266, 251 P. 484; Shannon v. State ex rel. Davidson, 33 Okla. 293, 125 P. 1106.

It is conceded by counsel that Cole's compensation, as provided in the contract, was not to be paid out of the income and revenue provided for the particular year within the provisions of section 26, art. 10, of the Constitution. In this case counsel for plaintiffs say: "The claim of Cole arising under the contract is neither a current expense nor to be paid out of current tax funds, but on the contrary is a contingent expense to come out of special funds, and such funds need not even be appropriated." It is said further that Cole's contract is not on the "pay as you go" basis established by the Constitution, but, "When he collects, 75 per cent. goes to the city and 25 per cent. to him. He is, in truth and in fact, obtaining moneys and in a sense revenues for the city."

Under the provisions of section 26, art. 10, Constitution, and the statutes enacted pursuant thereto, it is unlawful for a city council to contract indebtedness against the city in excess of the estimate made and approved by the excise board for the current fiscal year and for the particular purposes for which the debt is created. It is well established that such a contract is illegal, and unenforceable in the courts of this state. Wilson v. Oklahoma City supra; Incorporated Town of Jenks v. Pratt, 137 Okla. 156, 278 P. 331.

After a review of the decisions of this court, it becomes clearly apparent that the contract here in question was an attempt to create a present debt against the city. In O'Neil Eng. Co. v. Inc. Town of Ryan, 32 Okla. 738, 124 P. 19, the town council contracted to pay certain engineering fees upon a contingency and in the absence of an appropriation by the excise board for the particular purpose. There the court said:

"We think the contract in this case attempted to impose a present obligation and liability upon defendant, notwithstanding the contingency as to payments to be made thereunder."

. This holding of the court was based largely upon the authority of Beard v. Hopkinsville, 95 Ky. 248, 23 L. R. A. 409, from which decision the court quoted, with full approval, as follows:

"* * * A debt, payable in the future, is obviously no less a debt than if payable presently; and a debt payable upon a contingency, as upon the happening of some event, such as the rendering of service or the delivery of property, etc., is some kind of a debt, and therefore within the prohibition. If a contract or undertaking contemplates, in any contingency, a liability to pay when the contingency occurs, the liability is absolute; the debt exists, and it differs from a present unqualified promise to pay only in the manner by which the indebtedness was incurred. * * *"

The contract there considered was held to be in violation of section 26, art. 10, of the Constitution. See, also, Flood v. City of Shidler, 127 Okla. 148, 260 P. 52; Haskins & Sells v. Oklahoma City, 36 Okla. 57, 126 P. 204. In such cases the debt is created when the contract is made. Faught v. City of Sapulpa, 145 Okla. 164, 292 P. 15.

In view of defendants' admissions that no appropriation existed from which the debt could be paid, the contract cannot be sustained unless defendants can point to some constitutional or statutory provision other than section 26, art. 10, Constitution, and section 5955, O. S. 1931, whereby such contract may be justified. We are familiar with but one character of debt that may be legally created by a city in the absence of due appropriation therefor made in conformity with the foregoing constitutional and statutory provisions. Such character of debt is that arising from the operation of that class of business owned and operated by a city under authority of section 27, art. 10, and section 6, art. 18, of the Constitution, authorizing cities to own and operate their own utilities. It has been held that the expenditure of revenues so produced is not within the supervisory control of the excise board. City of Pawhuska v. Pawhuska O. & G. Co., 118 Okla. 201, 248 P. 336; In re Bliss, 142 Okla. 1, 285 P. 73; In re Protest of St. Louis & S. F. Ry. Co., 153 Okla. 283, 5 P. (2d) 763. See, also, Commerce Trust Co. v. Morris, 157 Okla. 127, 11 P. (2d) 183; In re Tax Levies of City of Woodward, 143 Okla. 204, 288 P. 458; Jones v. Blaine, 149 Okla. 153, 300 P. 369; Aaronson v. Smiley, 142 Okla. 29, 285 P. 59; Protest of Murray, 140 Okla. 240, 285 P. 80; Perrine v. Bonaparte, 140 Okla. 165, 282 P. 332; St. L. & S. F. Ry. Co. v. Andrews, 137 Okla. 222, 278 P. 617; Pitts v. Allen, 138 Okla. 295, 281 P. 126. The rule

announced in the foregoing cases is well defined, and limited in the scope of its operation, by our decision in Re Protest St. L. & S. F. Ry., supra, as follows:

"* * * Where water plant is entirely self-supporting and operated without ad valorem taxation, expenditures for operation may be made out of surplus revenues without appropriation."

Defendants take the position that Cole's contract should be sustained under the rule applied in the case of expenditures of revenues derived from utilities. In this connection it is urged that the city is authorized to lease its lands for oil and gas purposes (sec. 1, art. 1, charter; Ruth v. Oklahoma City, 143 Okla. 266, 287 P. 406); that in so doing it acts in a proprietary and not a governmental capacity and therefore is governed largely by the same rules applicable to individuals or private corporations engaged in the same business. City of Pawhuska v. Pawhuska Oil & Gas Co., supra. It is said that under that decision the city should be entitled to collect its royalties from its land unimpaired by the constitutional restriction as to appropriation of funds for government expense. As we have heretofore said, that case dealt with a municipally owned utility. The later case of Zachary v. Wagoner, 146 Okla. 268, 292 P. 345, limits the expenditure of utility revenues without appropriation to the expenses of operation, and holds that surplus revenues are income which must be appropriated and used as required by section 26, art. 10, Constitution.

Defendants contend that we have departed from the rule announced in Zachary v. City of Wagoner, supra, and cite the case of Baker v. Carter, 165 Okla. 116, 25 P. (2d) 747. That case involved the validity of certain bonds issued under the authority of a legislative act for the construction and equipment of dormitories for the Agricultural & Mechanical College. It is sufficient to say that in that case it is specifically pointed out that the Agricultural & Mechanical College is not one of the political subdivisions of the state referred to in section 26, article 10, supra. The constitutional provisions applicable in that case were sections 23 and 25, article 10, of the Constitution.

A city is not authorized by the Constitution to engage in the business of producing oil, but the leasing of its lands for such purpose is a necessary, and authorized, function of government. Leasing the public lands and receiving the rents or royalties therefrom is not within that class of business contemplated by section 6, art. 18, and section

27, art. 10, of the Constitution, and is not of that character of enterprise in which the city may engage, and conduct in a proprietary capacity, within the scope of the foregoing decisions of this court. The royalties so received merely constitute revenues from sources other than ad valorem taxation within the meaning of section 12678, O. S. 1931, and must be taken into account and included in the estimate by the excise board and duly appropriated for governmental expenditure, as are other miscellaneous revenues.

Defendants rely upon the case of Board of Education of Oklahoma City v. Thurman, 121 Okla. 108, 247 P. 996, as authority sustaining the city's power to employ Cole. This was an action instituted by Thurman as plaintiff to recover from the board of education an amount alleged to be due for services rendered to defendant in certain litigation under a contingent fee contract. We have carefully examined both the majority and dissenting opinions in that case and find that no mention is made in either of said opinions of the provisions of section 26, article 10, of the Constitution. The power and authority of the board of education to make a contract with an attorney to represent it upon a contingent fee basis is not mentioned or discussed. It is therefore apparent that the question was not raised, or if raised was not determined, and the case is therefore of no aid in determining the question here presented.

The petition discloses a contract, and a resolution of the council in reference thereto, whereby the council attempted to create a debt against the city in the absence of due appropriation therefor. The contract was therefore illegal and void as violative of section 26, art. 10, Constitution, and section 5955, O. S. 1931. The petition further discloses that revenues belonging to the city were paid out by authority and direction of the defendant councilmen under the void contract. It is further charged that said councilmen knew such contract to be void. The plaintiff having complied with the provisions of section 5965, O. S. 1931, by making demand upon such officials to commence suit, his petition states facts sufficient to constitute a cause of action against the defendants.

The majority opinion states that the city is not so strictly limited in the exercise of its proprietary powers as when acting in its governmental capacity. This may be true under the certain conditions, but here we have the question of the expenditure of public funds in which, in my opinion, the city is

bound by the constitutional limitations and the statutory and charter provisions. In a case recently decided by this court. Layne-Western Co. v. City of Depew, 177 Okla. 338, 59 P. (2d) 269, we said in the first syllabus:

"The provisions of sections 26 and 27 of article 10 of the Constitution with respect to the incurring of indebtedness by the municipal subdivisions of the state apply without regard to the source from which the funds pledged to the payment of the indebtedness are to be derived or whether the expenditure is on the governmental or the corporate side of the municipal powers."

And in the body of the opinion we said:

"With the sole exception of the rule of the Smartt Case (67 Okla. 141, 169 P. 1101), these limitations have been uniformly applied to indebtedness on the governmental side of the municipal business, and it would certainly be an anomalous situation to apply the constitutional limitations to governmental expenditures and to hold in the same breath that corporate expenditures (which are of lesser importance) are above the Constitution."

For the foregoing reasons, I most respectfully dissent.

I am authorized to say that Mr. Chief Justice McNEILL concurs in the views herein expressed.

## Supplemental Opinion on Second Petition for Rehearing.

BIERER, Special J. The discussion in this case in its later phases, and on the relator's first and second petitions for rehearing, has turned extensively on propositions not presented in the earlier phases of the case, making necessary this supplemental expression of the court's opinion. The majority of the court, in adhering to its original decision, is convinced that neither the restrictions on public expenditures provided by section 26 of article 10 of the Constitution of Oklahoma, nor the requirement for expenditure of public funds upon appropriation previously and regularly made, nor the so-called special fund doctrine, are involved in this case. In reaching its conclusion, the court is not persuaded by any idea that a municipality may deal with revenues other than those produced by taxation as a special fund not within constitutional and statutory restrictions, nor by any idea that a municipality can be liable on quantum meruit for benefit received where these restrictions prevent liability on contract.

The oil and gas royalties discovered and collected for the city by the defendant in

error, however, were neither money nor funds nor revenues until so discovered and collected, and never went into the public treasury until that part of them not assigned to Cole went into the treasury after Cole had discovered and collected them: then, and not until then, they became revenue, subject to all constitutional and statutory restrictions as to appropriation and expenditure.

It is undisputed that Oklahoma City has the right to lease its municipally owned lands for development for oil and gas, and to contract by such leases for the payment to it of royalties from oil and gas produced. The city is empowered by its charter to hold, lease, mortgage, convey, or otherwise dispose of any of its property, real or personal, and it is empowered by general law to make contracts, to take and acquire property, and to engage in any business or enterprise which might be engaged in by others under franchise from the city. Section 6, article 18, Oklahoma Constitution; section 6350, O. S. 1931. These powers were recognized in Ruth v. Oklahoma City, 143 Okla. 62, 287 P. 406. The power to lease must carry with it the implied power to collect the stipulated royalties, and to do whatever was reasonably necessary to collect and enjoy this contractual incident of the city's property right. So long as the auditor or investigator employed could be and was compensated in a manner other than by the expenditure of public funds or the incurring of an indebtedness against them, his employment for that purpose was valid. The petition discloses that he was compensated by assignment of a part interest in the concealed royalties which he undertook to discover and collect, and the city did not thereby incur any indebtedness to him.

The second petition for rehearing is, accordingly, denied.

BUSBY, WELCH, and CORN, JJ., and C. W. CAMERON, Special J., concur. McNEILL, C. J., and GIBSON, J, dissent.