**W. O. LIGON & COMPANY, a Co-Partnership, Plaintiff in Error,**

v.

**TOWN OF CHELSEA, a Municipal Corporation, Defendant in Error.**

No. 38248.

Supreme Court of Oklahoma.

June 23, 1959.

As Corrected July 20, 1959.

Rehearing Denied Nov. 10, 1959.

Elton B. Hunt, W. L. Eagleton, James R. Eagleton, Tulsa, for plaintiff in error.

Bassmann & Gordon, Claremore, for defendant in error.

PER CURIAM.

This action was instituted by W. O. Ligon & Company, a partnership, against the Town of Chelsea, a municipal corporation, to recover $2,689.49 with interest from September 27, 1955 alleged to be due for services rendered by plaintiff in auditing the utility accounts and funds of the defendant at a per-diem price, plus expenses, as shown by itemized statement of account, verified and made a part of plaintiff's petition. The plaintiff alleged that its claim against the defendant was filed in September, 1955 and that the defendant had in its Cash Utility Fund ample funds to pay and liquidate the obligation. The defendant filed its verified answer admitting it is a municipal corporation and that it owned and operated a light and water system and that such utilities are not operated through the budget approved by the County Excise Board. The defendant denied that it contracted or employed the plaintiff to audit the utility accounts of the municipality and denied it was indebted to plaintiff in any sum. The action was tried to the court without a jury and at the conclusion of all the evidence each of the parties, plaintiff and defendant, demurred generally to the evidence and judgment was rendered for the defendant denying the plaintiff any recovery.

The parties will be referred to herein as they appeared in the trial court. No findings of fact or conclusions of law were requested or made, but the trial judge in rendering judgment stated: "I just don't believe there was any contract to start with in this case."

The record shows in part that in April, 1955 the voters of the Town of Chelsea elected a Town Board of five Trustees who were installed in office at a board meeting on May 3, 1955. O. W. Whitenack, a board member, was chosen as Chairman of the Town Board. He, Whitenack, testified that prior to their induction into office the newly-elected Trustees held one or two conferences at his place of business as to what they would do when they took office, that he and another board member made a trip to Tulsa and consulted with three auditing firms, W. O. Ligon & Company, being one of them, concerning an audit of the books of the Town of Chelsea, and that the prices of the audit quoted by the different firms were practically the same. After the trustees were inducted into office on May 3rd, they passed the following motion:

"Motion was made by Mooney to hire a new auditor and an immediate audit begin. The motion seconded by Seely. Motion carried."

Following the meeting at which the motion was adopted, Mr. Whitenack phoned Mr. Rostet, a member of the partnership of

Ligon & Company, and told him: "We have decided for you to make the audit," and asked him to be in Chelsea the next morning for a conference, which he did and Mr. Whitenack and Mooney took him to the Town Clerk's office and told the clerk he was there to make the audit and she co-operated in the work which continued over a series of weeks. The minutes of the meeting of the Board on May 10th, 1955 shows the following entry:

"Mr. Rostet of W. O. Ligon & Company, the new auditor, presented brief report on the audit to date."

The minutes of the Board meeting on May 17th show the following entry:

"Mr. Rostet advised proper procedure for claim and invoice approval. Jack Gordon, City Attorney, was in attendance for discussion on legal matters."

Minutes of the Board meeting on June 7th show the following:

"A copy of the fiscal audit by M. W. Rostet was presented to each member of the Board, the Clerk and Treasurer."

The only defense raised by the defendant is that it denies:

" * * * that it employed the plaintiff to audit the utility accounts of the Corporation and denies that it ever made any contract whatsoever with the plaintiff * * *."

The plaintiff submits the errors of law under the following proposition, to-wit:

"The Town of Chelsea, which operates its wholly owned light and water systems, which utilities are not operated through the town budget approved by the County Excise Board, is liable to W. O. Ligon & Company for accounting and auditing services rendered in connection with said utilities at the request of the President of the Board of Trustees of the Town of Chelsea and performed with the full knowledge of each member of the Board of Trustees, and the town accepted said services and retained the benefits thereof."

The Board of Trustees, at their first meeting after taking office, adopted a motion to hire a new auditor and an immediate audit begin. The plaintiff did the work that the Board of Trustees voted to have done. Each member of said Board knew that the work they had ordered to begin immediately was being done, and conversed with Mr. Rostet as reflected by his testimony.

"Q. Did they confer with you while you were doing the work? A. Yes, they did.

"Q. Each and every member of the Board saw that you did work and conferred with you? A. Yes.

"Q. Did any member of the Board at any time suggest to you that the work should not be done by you? A. No, they did not."

The defendant accepted the services and received the written reports prepared by the plaintiff without any objections.

There is no statutory provision in Oklahoma providing how a municipality may operate its utilities outside of the regular municipal budget which must be approved by the County Excise Board. Many Oklahoma cases recognize the legality of such municipal utility operations outside the budget. No appropriations are made in the regular municipal budget for such utility operations.

The Board of Trustees of a municipality, when operating the municipality's solely owned utilities, is generally governed by the law applicable to the board of directors of a private corporation. Selected Investments Corp. v. City of Lawton, Okl., 304 P.2d 967, 968:

"In the operation of a water system as a private utility, a city has the same contractual rights and liabilities as a private corporation * * *."

Wichita Finance & Thrift Company v. City of Lawton, D.C., 131 F.Supp. 788, 789:

"The defendant City operates its water system as a private utility, the revenue therefrom being placed in a separate fund out of which all expenses of operation are paid. Each fiscal year a large surplus is transferred to the City's general fund. * * *

* * * * * *

"In the operation of its water system as a private utility, the defendant City had the same contractual rights and liabilities as a private corporation * * *."

City of Okmulgee v. Carlton, 180 Okl. 605, 71 P.2d 722, 723:

"When a city chooses to voluntarily assume and exercise powers intended for the private advantage and benefit of the locality and its inhabitants, there seems to be no good reason for absolving the city from the liability to a suit for damages to which an individual or private corporation, exercising the same powers for private purposes, would be liable. In respect to such business relations, a municipal corporation must be held to the same standard of dealing that the law provides for individuals or corporations."

See also, State ex rel. Woods v. Cole, 178 Okl. 567, 63 P.2d 730; Audit Company of New York v. City of Louisville, 6 Cir., 185 F. 349; Oklahoma Natural Gas Corp. v. City of Enid, 179 Okl. 283, 65 P.2d 440; City of Pawhuska v. Pawhuska Oil & Gas Co., 118 Okl. 201, 248 P. 336.

In determining whether a contract was entered into it will be necessary to review briefly the record. At a meeting of the members of the Board of Trustees a few days before they took office they decided that when they did take office they would elect Mr. Whitenack chairman and would order an immediate audit of the books. Regardless of what else was said, if anything, Mr. Whitenack and Mr. Mooney made a trip to Tulsa and conferred with three auditing firms as to what it would cost to get the books audited. When they took office a few days later, without naming anyone to do the work, by motion or otherwise, it was determined to have an immediate audit. Mr. Whitenack, who was elected chairman, got in touch with the plaintiff, one of the firms that he and Mooney had conferred with, and got their price for doing the work and told them to come up and begin the work, which they did and they were supervised in the work by the Board of Trustees until the work was completed.

We hold under the facts and circumstances in this case a good and valid contract was entered into with the plaintiff to do the work.

We have carefully examined the cases cited and relied upon by the defendant, and find that none of them are applicable to the facts in this case. Some of the cases cited by defendant are cases which deal with purported contracts that were in violation of charter provisions or statutes. Others deal with cases where an architect was employed by the mayor of the city without approval of the city council. Other cases deal with proof of the existence, character and amount of outstanding legal indebtedness of a municipality. In the present case substantial proof of the legal indebtedness was made.

The judgment is reversed and remanded with instructions to the trial court to enter judgment for the plaintiffs as prayed for.

The Court acknowledges the aid of Supernumerary Judge N. S. Corn in the preparation of this opinion. After a tentative opinion was written, the cause was assigned to a Justice of this Court. Thereafter, upon report and consideration in conference, the foregoing opinion was adopted by the court.

DAVISON, C. J., WILLIAMS, V. C. J., and HALLEY, BLACKBIRD, IRWIN and BERRY, JJ., concur.

WELCH, JOHNSON and JACKSON, JJ. dissent.

**182**

WELCH, Justice (dissenting).

It seems to me that the majority opinion introduces a new concept into the legal philosophy and rules heretofore followed in reference to the requirements to constitute a valid and binding contract made by the governing board of a city or town or school district or county.

I believe it is sound to follow the rule that such a governing board must take some formal action as a board in the making of a contract with a second party in order to create a contractual money liability against public funds of the citizens who are represented by such board. I would affirm the trial court in view of our former decisions.